MONROE READY MIX CONCRETE, INC. *v.* WESTCOR DEVELOPMENT CORPORATION ET AL.

BOGDANSKI, PETERS, HEALEY, ARMENTANO and WRIGHT, Js.

Argued February 10—decision released March 17, 1981

*Ira B. Charmoy,* for the appellant (plaintiff).

*Edward J. Androski,* for the appellee (defendant).

PETERS, J.  This case involves the interpretation of a contract of guaranty.  The plaintiff, Monroe Ready Mix Concrete, Inc., sued the defendants, Westcor Development Corporation and its officers Michael Piscitelli and John D. Prete, to recover on an express contract for the price of goods sold and delivered by Monroe to Westcor.  After a trial to the court, judgment was rendered in favor of the plaintiff against the corporate defendant only.[1]  The plaintiff appeals from the judgment in favor of the two individual defendants.

The underlying facts are not presently in dispute.  In the fall of 1970, JAMCO Inc., a predecessor of the Westcor Development Corporation, was interested in purchasing cement from the plaintiff Monroe Ready Mix Concrete.  In connection with these purchases, Michael Piscitelli and John Prete, JAMCO's president and secretary/treasurer respectively, executed a guaranty contract in which each "guarantee[d] personally the payment of all materials and services ordered by JAMCO Inc."  Credit was extended to JAMCO on the basis of this guaranty contract from December, 1970, to March, 1971, when the JAMCO account was paid in full.

---

[1] No appeal has been taken from the judgment holding Westcor Development Corporation liable.

In 1971, JAMCO Inc. became Westcor Development Corporation. It continued to have the same corporate officers and shareholders. Westcor ordered no cement from Monroe from March, 1971, to October, 1973, a hiatus of thirty-one months. On October 11, 1973, Westcor renewed its purchases of cement on credit. Although Piscitelli was asked to execute a new guaranty contract, he neither executed a new guaranty nor expressly revoked the old one. Westcor incurred and failed to pay charges amounting to $16,593.52 plus interest and attorney's fees. This litigation, based on the contracts of purchase and of guaranty, ensued.

The trial court delivered its judgment orally at the end of the trial. The court concluded that the question of the duration of the guaranty contract was a question of fact dependent upon the intent of the parties. It found the evidence insufficient to support the plaintiff's theory that the guaranty continued into 1973 and 1974. The court emphasized the discontinuance of business between the parties, after the account had been paid in full, for a period of thirty-one months, as indicating an intent to cancel out and nullify the guaranty contract entered into in November, 1971.

The plaintiff argues that the guaranty executed by the individual defendants was an unconditional continuing guaranty that could be terminated only by notice of revocation. Since no such notice was alleged or proven, the plaintiff maintains that the trial court erred in absolving these defendants of liability.

Some one hundred years ago, in discussing continuing guaranties, the New York Court of Appeals lamented: "Precedents do not help much in the con-

struction of such instruments." *White's Bank* v. *Myles,* 73 N.Y. 335, 341, 29 Am. Rep. 157 (1878). That observation is as true now as it was then. The interpretation of continuing guaranties, as of other contracts, is principally a question of the intention of the contracting parties, a question of fact to be determined by the trier of facts. *Finnucan* v. *Feigenspan,* 81 Conn. 378, 381–82, 71 A. 497 (1908); *Fidelity National Bank of South Miami* v. *Melo,* 366 So. 2d 1218, 1221 (Fla. App. 1979). Even a continuing guaranty that is, in terms, unlimited as to duration, imposes liability upon a guarantor only for such a period of time as is reasonable in light of all of the circumstances of the particular case. *Mamerow* v. *National Lead Co.,* 206 Ill. 626, 634, 69 N.E. 504 (1903); *Continental Can Co.* v. *Lanesboro Canning Co.,* 180 Minn. 27, 28–29, 230 N.W. 121 (1930); *Looney* v. *Belcher,* 169 Va. 160, 169, 192 S.E. 891 (1937).

The plaintiff does not seriously challenge these conclusions of law. It argues, instead, that on the facts before the trial court, this contract of guaranty could only be terminated by notice of revocation. We do not agree. The finding of the trial court with respect to the intent of the contracting parties regarding the scope of their contractual commitment is, like any other finding of fact, subject only to limited review on appeal. *Otto Contracting Co.* v. *S. Schinella & Son, Inc.,* 179 Conn. 704, 709, 427 A.2d 856 (1980); *Hydro-Hercules Corporation* v. *Gary Excavating, Inc.,* 166 Conn. 647, 653, 353 A.2d 714 (1974); *Bianco* v. *Darien,* 157 Conn. 548, 557, 254 A.2d 898 (1969); *Finlay* v. *Swirsky,* 98 Conn. 666, 671, 120 A. 561 (1923). Our role is limited to determining whether the decision of the trier of the facts was clearly erroneous in light of

the evidence and the pleadings in the whole record. Practice Book § 3060D; *Stelco Industries, Inc.* v. *Cohen,* 182 Conn. 561, 564, 438 A.2d 759 (1980); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221, 435 A.2d 24 (1980).

The trial court's finding that the continuing guaranty lapsed because of the thirty-one month hiatus in the placement of orders by Westcor is sufficiently supported by the evidence. The plaintiff offered, in support of its position, only the documentary evidence of the contract itself, which did not expressly require written notice of revocation, and the testimony of its plant manager, Joseph Tabarrini. Tabarrini testified about his understanding that credit arrangements generally continued to be binding despite payment of outstanding balances in full, and that such arrangements were frequently reactivated after a three year gap in doing business. Michael Piscitelli, one of the individual defendants, testified, to the contrary, that when Westcor resumed business with the plaintiff he was asked, because of the lapse of time, to fill out a new credit application undertaking personal liability. He stated that he had expressly informed the plaintiff that "we did not sign personally, and if they wanted to sell us concrete, they would sell it to Westcor Development." Viewing this record as a whole, we cannot conclude that the trial court clearly erred in deciding that the plaintiff had not met its burden of proving the personal liability of the individual defendants for Westcor purchases in 1973 and thereafter.

There is no error.

In this opinion the other judges concurred.