SECOND NEW HAVEN BANK *v.* LOUIS QUINN ET AL.
(2260)

DANNEHY, C.P.J., TESTO and HULL, Js.

Argued October 11—decision released December 6, 1983

*John L. Gerardo,* for the appellant (defendant Phyllis Quinn).

*Roger Sullivan,* with whom, on the brief, was *Robert D. Mercer-Falkoff,* for the appellee (plaintiff).

PER CURIAM. The complaint is in two counts. The first alleges a loan to the defendants of $12,850 by a note executed on October 10, 1972, upon which there was due and unpaid $2432.56. The second count alleges a loan to Louis Quinn of $44,000 by a note executed on June 9, 1965, upon which there was due and unpaid $12,588.14, and further alleges that before delivery of the note the defendant Phyllis Quinn guaranteed payment of it, waiving presentment, protest and all demands and notices of every kind in connection with the guaranty and the liabilities, obligations and undertakings guaranteed thereunder.

The judgment against the defendant Louis Quinn, from which no appeal is taken, eliminates this defend-

ant from our present consideration, and the only questions before us relate to the defendant Phyllis Quinn alone.[1]

Her answer admits the allegation of the first count that on October 10, 1972, she and Louis Quinn, by their note, promised to pay the plaintiff $12,850 on December 11, 1972, and, as to the second count, denies that she guaranteed payment of the note made by Louis Quinn on June 9, 1965. Then, as a special defense to the first count, she alleges that she was coerced into making the note on October 10, 1972, by the plaintiff's threat to foreclose a mortgage on her real property in Hamden; and, in specially defending against the second count, she alleges that the instrument of guaranty on which the plaintiff relies is invalid because it is undated and was materially altered subsequent to its execution. In replying to these special defenses, the plaintiff denied them.

Upon the trial of the action, a judgment was rendered in favor of the plaintiff for $15,020.70, which was for the $2432.56 claimed in the first count and for the $12,588.14 claimed in the second count.

The plaintiff was entitled to recover on the promissory note from the defendants and on the promissory note from Louis Quinn, guaranteed by Phyllis Quinn, provided the special defenses were not sustained. We conclude from all the evidence of record that the trial referee could reasonably have determined that there was neither duress nor coercion and, further, that the evidence was such as to justify a legitimate conclusion that the instrument of guaranty was valid.

The record shows no substantial disagreement of the parties upon the following facts decisive of this case. In or about 1961, the defendant Louis Quinn com-

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

menced a business engaged in the sale, lease and servicing of office equipment. At some time prior to 1964, he incorporated the business, at which time the defendant Phyllis Quinn was elected secretary of the corporation.

In connection with the business, both before and after its incorporation, the defendants borrowed funds from time to time upon their personal signatures. They transacted these loans with the Guilford Trust Company until November 16, 1964, when it was acquired by the Second National Bank, which in 1972 became the Second New Haven Bank. The loan activities of the defendants continued with these successors. Two of these loans are the subject of this action.

In 1962, the defendants borrowed $12,850 from the plaintiff, by a ninety day renewable note. Thereafter, the defendants pledged various assets to secure this loan, including certain savings account passbooks, insurance policies and marketable securities. At some time prior to November 1964, David Nauss, a loan officer at the plaintiff's bank, had the defendant Phyllis Quinn sign a document of continuing guaranty, securing and providing guaranty for all the debts of Quinn's Business Equipment, Inc. The guaranty document, however, was not dated and the name of the debtor appears in a typeset different from that used on the rest of the document. Neither the plaintiff nor its witnesses could state with any certainty when the debtor's name was inserted.

On June 8, 1965, the plaintiff lent Quinn's Business Equipment, Inc., $44,000 by note made by Louis Quinn. Before approving the loan, however, the plaintiff required security in addition to Phyllis Quinn's guaranty agreement. Therefore, Phyllis Quinn, on June 7, 1965, made a note payable to the plaintiff in the amount of $30,000, which was secured by a mortgage deed to

the Quinn family residence, title to which was held by Phyllis Quinn. The defendants also pledged receivables, inventory and after acquired property as collateral. This loan went into default in May, 1971, and is the subject of the second count of the plaintiff's complaint.

In October, 1972, the plaintiff, in order to renew the still outstanding 1962 loan, presented the defendants with a new note. The defendant Phyllis Quinn was reluctant to sign this note. David Nauss informed her that the bank might seek foreclosure of the mortgage she executed in 1965, if she did not sign. On the advice of her attorney, John L. Gerardo, the defendant Phyllis Quinn signed the note for $12,850 on October 10, 1972. This note, which is the subject of the first count of the plaintiff's complaint, was due on December 11, 1972, but no voluntary payments were ever made on it.

On December 15, 1972, the plaintiff liquidated some of the collateral pledged to secure the note alleged in the first count and applied the proceeds of $3795.56 to pay off an unsecured corporate installment note dated 1970, which is not a subject of this action. The following week, on December 22, 1972, the plaintiff liquidated $10,417.67 worth of collateral pledged by the defendants and applied the proceeds to the note alleged in the second count. At the defendants' request, however, the plaintiff, on July 12, 1973, changed the entry to credit the $10,417.67 against the loan alleged in the first count, where it rightfully belonged.

On January 9, 1974, in the office of her attorney, the defendant Phyllis Quinn signed a financial affidavit under oath in connection with a dissolution of marriage proceeding. This affidavit acknowledged the guaranty agreement and itemized the loans alleged in counts one and two as valid, outstanding debts of Phyllis Quinn.

Thereafter, the parties fell into dispute. This action was instituted and resulted in this appeal.

In his memorandum of decision, the trial referee stated his conclusion that the defendant Phyllis Quinn failed to prove that she signed, under duress, the note on October 10, 1972, promising to pay the plaintiff $12,850. He concluded not only that the payment could not be regarded as involuntary, but that no wrong of any kind on the part of the plaintiff was shown. It is inherent in duress that the acts or threats claimed to constitute it should be wrongful. 2 Restatement (First), Contracts § 492. The court found that Phyllis Quinn consulted her attorney about the plaintiff's ability to bring a foreclosure action. He advised that she sign the promissory note. The inevitable inference is that she deemed it to be to her interest to renew the outstanding 1962 loan.

In *Weiner* v. *Minor,* 124 Conn. 92, 95, 197 A. 691 (1938), it was fully recognized and decided that where one insists on a payment which he honestly belives he is entitled to receive, certainly, unless that belief is without any reasonable ground, his conduct is not wrongful and does not constitute duress. This case falls within this principle. Here, there was no fraud, no attempt to plunder the defendant by color of legal process. The trial referee correctly held that Phyllis Quinn failed to prove that she signed the promissory note, on October 10, 1972, under duress.

We have not overlooked the defendant Phyllis Quinn's claim that the court erred by deciding that she did not prove by credible evidence the allegations of her special defense that the guaranty was altered after its execution. The brief of Phyllis Quinn is concerned with the claimed inequitable result of the trial referee's interpretation and effect of the guaranty agreement. The interpretation and effect of the agreement were issues to be decided as questions of fact by the referee to whom the case was referred. *Monroe Ready Mix Concrete, Inc.* v. *Westcor Development Corporation,* 183 Conn. 348, 351, 439 A.2d 362 (1981).

The defendant Phyllis Quinn contends that the debt alleged in the first count is unenforceable because the plaintiff applied to an unsecured installment loan pledged funds which were sufficient to pay off the entire balance due under the 1972 note, the secured loan. This claim was not made at the trial. If made, it could have been met. We are of the opinion that the situation presents a fair case for the enforcement of the rule that claims not made at the trial court will not be considered here. *Chaplin* v. *Balkus,* 189 Conn. 445, 447, 456 A.2d 286 (1983). The defendant Phyllis Quinn failed to preserve this issue for appeal.

It was suggested at the argument, although not strenuously insisted on, that, as to Phyllis Quinn's counterclaim, the court completely ignored all the evidence presented as to harassment and damage to her caused by the plaintiff's action. The counterclaim only refers to such matters as are set out in the special defense to the first count. We have already stated that the ruling of the court on the first special defense was strictly in accordance with the rules of law and properly supported by the facts. The same statements apply to the counterclaim. The trial referee found that the defendant Phyllis Quinn failed to present any credible evidence to support the allegations of her counterclaim. Any other conclusion would be unreasonable.

There is no error.