STELCO INDUSTRIES, INC. *v.* WILLIAM A. BETTE ET AL.
(2421)

TESTO, DUPONT and BORDEN, Js.

---

Argued February 28—decision released May 22, 1984

*Daniel Green,* for the appellant (plaintiff).

*Kevin P. Thornton,* with whom, on the brief, was *James R. Healey,* for the appellees (defendants).

BORDEN, J. The plaintiff, Stelco Industries, Inc., appeals[1] from a judgment of the trial court for the individual defendants, James R. Bette and William A. Bette, and for Stelco against the corporate defendant, Bette Brothers, Inc., of which the individual defendants are officers and shareholders. Stelco brought this contract action against the individual defendants and against Bette Brothers to recover the cost of material and supplies sold on account to Bette Brothers for use in the construction of housing units. Stelco claimed that a personal guaranty, signed by the individual defendants at the time the account was opened in December, 1976, obligated them to pay Bette Brothers' present debt. The individual defendants claimed that the guaranty only extended to five units and that it expired upon completion of those units. The court concluded that the contract was unambiguous; that it was limited to five units; and that it expired upon completion of those

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

units. With respect to Stelco's claim for interest and attorney's fees, it concluded that, since the contract had expired, Stelco was only entitled to interest at the statutory rate and that there was no contractual or statutory basis for awarding attorney's fees. Accordingly, the court rendered judgment on the complaint for the individual defendants, and for Stelco against Bette Brothers on a quantum meruit basis.

The court found the following facts. In 1976, one of Stelco's salesmen solicited Bette Brothers' business. At that time, the individual defendants were seeking to terminate their unlimited personal liability for Bette Brothers' debts to their then supplier. James Bette spoke with the salesman and was given the understanding that a personal guaranty to Stelco would be limited to the first five units built by Bette Brothers at Kettletown Woods Road, Southbury, which would provide a credit history, and that thereafter the corporation's account would be an open one. Stelco prepared an "Application For Extension of Credit from Stevenson Lumber Company"[2] and forwarded it to Bette Brothers and to the individual defendants for their signatures. The credit application, which became the agreement of the parties, contained the legend "Single House Const. # of Units 5 Job Location Kettletown Woods Rd., Southbury, Ct. #23 Land Title Currently Held by Bette Bros., Inc." Part of the agreement was a guaranty clause.[3] At the time the agreement was signed, Bette Brothers owned a twenty-five lot development

---

[2] Stevenson Lumber Company is a division of Stelco.

[3] The guaranty provides in pertinent part: "In consideration of the granting of credit by STELCO INDUSTRIES, INC. (or any of its subsidiaries) to the person or persons who have signed the within and foregoing agreement, the undersigned guaranty payment of all obligations incurred by any of said persons under said agreement, with all costs of collection, including reasonable attorney's fees as therein stated. . . . This shall be a continuing guarantee and shall not be affected by any extension of time, payment, modifications or additions."

at Kettletown Woods Road, Southbury, of which fifteen lots remained for building and sale. The parties agreed that the principal debt is $6410.39[4] for the account on the Kettletown Woods Road development and $28,238.63 for a new development entitled "Lot 29 Homestead Road," for a total balance of $34,649.02 for all purchases between December 1976 and June 1981.

Stelco first claims error in the court's conclusions that the credit agreement and personal guaranty of the individual defendants were limited to five units and that the agreement terminated after payment was made for the material used on those units. It argues in effect that the agreement was unambiguous and that there was no language in it from which the court could conclude that the personal guaranty was limited to any particular location or number of units. Our consideration of this claim rests largely upon a determination of the scope and duration of the credit agreement.

A contract is to be construed according to what may be assumed to have been the understanding and intention of the parties. *Lar-Rob Bus Corporation* v. *Fairfield,* 170 Conn. 397, 406–407, 365 A.2d 1086 (1976). That intention is to be determined from the language used, in light of the situation of the parties and the circumstances of the transaction. In construing the contract, all relevant provisions must be considered. Id., 407.

The court found that one of the reasons the defendants began doing business with the plaintiff was that they were seeking to end their continuing unlimited personal liability to their previous supplier for the debts of their corporation. On the credit application was printed "Single House Const. # of Units 5," the "5"

---

[4] The figure of $6410.39 presumably represents the balance owed on material supplied by Stelco beyond the five units.

having been typewritten by the plaintiff; on the following line was printed "Job Location," and typewritten thereafter "Kettletown Woods Rd., Southbury, Ct. #23." On the basis of these insertions and the circumstances of the parties at the time they entered into the agreement, the court concluded that the agreement was one for Stelco to provide credit to Bette Brothers for five units at Kettletown Woods Road, Southbury, and that the individual defendants, as guarantors, were liable only to the extent of the debt attributable to those units.

"The interpretation of continuing guaranties, as of other contracts, is principally a question of the intention of the contracting parties, a question of fact to be determined by the trier of facts." *Monroe Ready Mix Concrete, Inc.* v. *Westcor Development Corporation,* 183 Conn. 348, 351, 439 A.2d 362 (1981). "Even a continuing guaranty that is, in terms, unlimited as to duration, imposes liability upon a guarantor only for such a period of time as is reasonable in light of all the circumstances of the particular case." Id. The finding of the trial court with respect to the intent of the parties regarding the scope of their contractual commitment is subject only to limited review on appeal to determine whether it is clearly erroneous in light of the evidence in the whole record. *Otto Contracting Co.* v. *S. Schinella & Sons, Inc.,* 179 Conn. 704, 709, 427 A.2d 856 (1980); *Zolan, Bernstein, Dworken & Klein* v. *Milone,* 1 Conn. App. 43, 47, 467 A.2d 938 (1983). Upon review of the whole record, we conclude that there was sufficient evidence to support the trial court's finding.

Stelco next argues that since the court found the agreement unambiguous there was no occasion for it to engage in a process of construction founded upon evidence beyond the language of the agreement. While it is true that the court stated that the agreement was unambiguous, our review of this finding must encom-

pass the entire record. *Damora* v. *Christ-Janer,* 184 Conn. 109, 113, 441 A.2d 61 (1981).

The court examined the language of the agreement, considered the circumstances and situation of the parties, considered all the relevant provisions of the agreement as a whole, and then concluded that the contract was unambiguous. The court did not find that the agreement was unambiguous on its face, but concluded that it was unambiguous after all the evidence was heard.[5] We cannot, as Stelco suggests, seize upon one isolated line in the trial court's memorandum of decision and use it as a basis to reverse an otherwise correct decision. See *Coe-Park Donuts, Inc.* v. *Robertshaw Controls Co.,* 1 Conn. App. 84, 468 A.2d 292 (1983).

Stelco next claims that the court erred in admitting testimony as to the defendants' interpretation and understanding of the credit agreement and guaranty. It maintains in effect that there was no need to admit extrinsic evidence because the agreement was clear and unambiguous. We disagree.

Although we generally do not consider an evidentiary ruling unless there is strict compliance with the requirements of Practice Book § 3060F (c) (3),[6] we note that the parol evidence rule is a rule of substantive law

[5] During direct examination of James Bette about his interpretation of the agreement, the plaintiff objected on the ground that his interpretation of the agreement was irrelevant because the agreement spoke for itself. The court overruled the objection, stating that if there is a claimed ambiguity the understanding of one of the parties may be considered.

[6] Practice Book § 3060F (c) (3) provides in part: "When error is claimed in any other ruling in a court or jury case, the brief shall include, where appropriate . . . the question or offer of exhibit; the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; the ruling; and any exception. When the basis of the ruling cannot be understood without a knowledge of the evidence or proceeding which preceeded or followed the ruling, a brief narrative or verbatim statement of the evidence or proceeding should be made. A verbatim excerpt from the transcript should not be used if a narrative statement will suffice."

rather than a rule of evidence. *Ruscito* v. *F-Dyne Electronics Co.,* 177 Conn. 149, 160, 411 A.2d 1371 (1979). We therefore consider this claim.

Parol evidence is admissible (1) to explain an ambiguity appearing in the instrument; (2) to prove a collateral oral agreement which does not vary the terms of the writing; (3) to add a missing term in the writing which indicates on its face that it does not set forth the complete agreement; or (4) to show mistake or fraud. *Jay Realty, Inc.* v. *Ahearn Development Corporation,* 189 Conn. 52, 56, 553 A.2d 771 (1983); *Kalosky* v. *Waterbury,* 1 Conn. App. 105, 108, 468 A.2d 1260 (1983). When the words used in a contract are uncertain, as here, parol evidence of conversations between the parties antedating the contract may be used as an aid in determining their intent. *Ruscito* v. *F-Dyne Electronics Co.,* supra, 160. It is noteworthy that Stelco offered no evidence to explain the insertions on the agreement regarding the number of units and job location.

Stelco next argues that there was no evidence from which the trial court could find that the salesman was authorized to approve credit to the defendants or to accept a credit agreement guaranty limited to five units. We disagree.

Walter Zelanin, Stelco's credit manager, testified that a specific salesman was assigned to the account. James Bette testified that the same salesman, on behalf of Stelco, approached Bette Brothers about switching its business to Stelco and then negotiated the agreement limiting the personal guaranty to five units.

Whether the salesman was an agent of the plaintiff, and the extent and nature of his authority are questions of fact to be determined from the conduct of the parties under all the circumstances. *E. Paul Kovacs & Co.* v. *Alpert,* 180 Conn. 120, 126, 429 A.2d 829 (1980);

*Reynolds* v. *Ramos,* 188 Conn. 316, 323 n.8, 449 A.2d 182 (1982). The trial court's finding to the effect that the salesman had authority to negotiate credit terms is supported by the evidence on the record and is not clearly erroneous. See Practice Book § 3060D; *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

Our conclusion that the court did not err in finding that the contract was limited as to Bette Brothers and the individual defendants disposes of Stelco's claims regarding contractual interest and an award of attorney's fees. Since that conclusion must stand, those claims must fall.

There is no error.

In this opinion the other judges concurred.