[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action claiming damages came to this court on May 24, 1988 and thence to later dates when the parties appeared and the matter was tried on October 29, 1991.
The court finds the following facts. The defendant corporation (hereinafter "Gallery") and the plaintiffs entered into a written lease in June 1982 for the rental of commercial premises. The lease term was for four years, from July 1, 1982 to June 30, 1986. The corporate defendant operated a store which sold tiles, as had its predecessor lessee at the premises, Connecticut Tile Fashion (hereinafter "Fashion"). Defendant Alfonso Cammarota guaranteed "the payment of all rent and the performance of all the terms, covenants and conditions" of the lease. (Exhibit "A") The defendant tenant failed to vacate on June 30, 1986 and the plaintiffs successfully brought a summary process action as a result of which the corporation vacated the premises in December 1986.
Alfonso Cammarota was frequently on the premises of Fashion. Plaintiff Joseph D'Amato thought Cammarota owned part of that business because he dealt with Cammarota "one on one" regarding matters concerning that earlier tile business. Cammarota, by his own admission, was "up over there every day" and when D'Amato complained that Fashion was not paying its rent and asked Cammarota if he wanted the space, Cammarota agreed to rent it. CT Page 9943 The defendant corporation was set up and Cammarota's son, Luigi Cammarota, operated the Gallery and was President of the corporation. Alfonso Cammarota's wife, Maria, was Vice-President and Secretary. Alfonso Cammarota himself negotiated the lease terms. Gallery added display areas (vignettes) and storage platforms after it took possession.
Many repairs were needed at the premises after Gallery vacated. Tiles adhered to portions of the floor; platforms and display cases which had held tiles remained; wires were left hanging; ceiling tiles were damaged and the ceiling grid was "mangled"; a large window was cracked; there was accumulated debris.
The main issue is the amount of damages, if any, due the plaintiffs as a result of the defendant's tenancy.
A lease is a contract. Sandrew v. Pequot Drug., Inc., 4 Conn. App. 627,629. The measure of damages is that the award place the injured party in the same position as he would have been in had the contract been fully performed. Furthermore, in an action for damages, the injured party is under a duty to mitigate damages. Rokalor, Inc. v. Connecticut Eating Enterprises, Inc., 18 Conn. App. 388,389-390.
The issue of damages here turns on the interpretation of paragraphs 5 and 29 of the lease. Paragraph 5 states that the tenant accepts "the premises in their present condition" and that "all erections, alterations, additions and improvements, whether temporary or permanent in character, which may be made upon the premises either by the Landlord or the Tenant, shall be the property of the Landlord and shall remain upon and be surrendered with the premises as a part thereof at the termination of this lease without compensation to the Tenant." Paragraph 29 states that "(T)he Tenant agrees to accept the premises in `as is' condition", but adds the following: "(N)ote: Tenant agrees that the floor and walls shall be returned to their original state prior to occupancy at termination of lease."
The defendant's position is that the original state of the premises is the condition of the premises at the time it entered the lease in July, 1982 after fashion vacated. The plaintiffs' position is that the condition to be restored is that existing at the time Fashion took possession of the premises. (In fact, during cross-examination in which he was asked to review the two paragraphs at issue, D'Amato asked defendant's counsel whether or not they contradicted each other.)
The plaintiff bases his position on the fact that Cammarota was the individual he dealt with in connection with Fashion, and not CT Page 9944 one Joe Toth, another person involved in the business. However, his conclusion that Cammarota was an owner of the business and that Gallery was a continuation of Fashion was unsupported by evidence. Therefore, the Court finds that the condition of the premises from which damages are to be measured is that which obtained in July 1982. The plaintiffs contend that changes were made to the premises after Gallery took over. They added display areas (vignettes) and storage platforms. The defendant Cammarota contends that no changes were made.
D'Amato conceded that although some of the ceiling tiles had been damaged from a roof leak, and a portion of the ceiling repaired, he had determined that it was "better structurally" to remove the old grid and replace the earlier ceiling. He expended $2024.82 on materials (Exhibits "N" and "O") and allowed $2000 for labor to complete the ceiling which he granted as a concession to a new tenant. He paid $1021.25 to have the debris removed (Exhibit "Q" and "P"). Glass installed in the window cost $1400. (Exhibit "R") Materials such as sheetrock and compound cost $278.26. D'Amato was a credible witness admitting when he erred, such as when he conceded that the portion of a real estate tax bill charged to the defendant was excessive and should be reduced to $1500. (Exhibit "D") Therefore, the court finds that $1500 is due the plaintiff for the defendant's portion of the real estate taxes.
D'Amato also admitted that when he signed the affidavit of February 22, 1988 at the commencement of this action he had not made final payments on some of the items but had estimated them. He further conceded that he had not explored the problem of the removal of tiles and adhesive from the floor. He spent $800 with GM Maintenance (Exhibit "G") which attempted to remove the tiles with equipment rented from United Rent-Alls for $243.03 (Exhibit "J" and "K") When this attempt was unsuccessful, D'Amato called in All-American Pools which removed the tiles over a period of ten days at a cost of $3953. (Exhibits "L" and "M") When Cammarota disputed that cost saying an expert tile remover would have cost $1 per square foot D'Amato admitted that he did not use a tile removal expert because he had not had "good experiences" with people who dealt in tiles. The court finds that the plaintiff failed to mitigate his damages with regard to the removal of tiles. Approximately 1200 square feet was covered in tile by the defendant. Therefore, the court finds that $1200 of the cost is allocable to the defendant for the removal of the tiles.
The defendants also owed use and occupancy for December 1986 in the amount of $2200. In addition, paragraph 3 of the lease provided that the defendants were liable for attorney's fees incurred by the plaintiff in "enforcing any of the obligations under his lease." That amount in the summary process action was $1185. The plaintiffs hold a security deposit of $1550 and $4000 received in CT Page 9945 settlement of the summary process action. Attorney's fees for this action are awarded in the amount of $5250 pursuant to paragraph 3 of the lease. (Exhibit "T")
Alfonso Cammarota claims that he is not liable for damages in that his guaranty does not survive the lease. For this premise he cites the case of Monroe Ready-Mix Concrete. Inc. and Westcor Development Corp. 183 Conn. 348. The court finds this case inapposite. In Monroe, the Defendant signed a guaranty in connection with the contract between Monroe Ready-Mix and a predecessor corporation, JAMCO. Subsequently, JAMCO placed orders with Monroe Ready-Mix for a period of thirty-one months. The guarantor was asked to execute a new guaranty contract but neither did so nor revoked the old guaranty. The trial court determined that the question of the duration of the guaranty contract was a question of fact dependent upon the intent of the parties. (p. 35)
Cammarota knew that his own past actions in dealing with the landlords for the earlier tile company would give weight to his desire to obtain a lease for Gallery. He, in fact, testified that he "got the lease". Furthermore, the guaranty recites the consideration for Alfonso's Cammarota's guaranty, namely, the execution of the lease by the landlord.
In Garland v. Gaines, 73 Conn. 662, 666, the defendant guarantor executed a guaranty agreement in connection with his son's leasing of certain premises. The guaranty stated as follows: "In consideration of the letting of the premises. . .I . . . hereby guarantee the payment of said rent and performance of the agreement of the lessees for the full term of this lease. "The court held that the guarantor's undertaking was absolute. It found the consideration to be sufficient, and the action of the plaintiff landlord to have been taken "upon the faith of the defendant's guaranty." The guarantor became liable upon the default of the lessee.
In the instant case the consideration was sufficient. The guaranty assured not only "payment of all rent" but "the performance of all of the terms, covenants and conditions provided in said lease." That language necessarily carries with it the inference that if the lease is breached by non-performance, i.e. the restoration of the premises, it is the intention of the parties that liability be imposed on the guarantor. Here, Cammarota testified that he had negotiated the lease on behalf of Gallery, but that he was uncertain as to some of its terms. He claimed he had not read through the lease but "took his son's word." The court finds this unconvincing. Had Cammarota wished to limit his responsibility as a guarantor he could have negotiated that point; the fact that the guaranty reads as it does is evidence that the parties intended that he be bound. It is clear from the testimony that Cammarota was the one constant throughout the parties' various dealings. It was to him the plaintiffs looked for CT Page 9946 assurance
For the foregoing reasons. judgment shall enter in favor of the plaintiffs in the amount of $12,809.33 together with interest from the return date and attorney's fees in the amount of $5250 against the corporate defendant as principal and the individual defendant as guarantor.
LEHENY, J.