[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO STRIKE
The plaintiff has moved to strike all special defenses and all counts of the Counterclaim which the defendants have filed in response to the plaintiff's action to foreclose a mortgage from the defendants, Thomas O. Montanari and Jacqueline Montanari.
The Counterclaim is based on the following allegations. On September 6, 1985 Thomas O. Montanari ("Montanari") executed a Promissory Note to the order of Home Bank in the original principal amount of $125,000. The Promissory Note was secured by a Mortgage from Montanari to Home Bank. At some time prior to January 1, 1990, Home Bank transferred its interest in the Promissory Note and Mortgage to Connecticut National Bank. On November 16, 1990 the defendants received a notice of default (presumably from the plaintiff). Between December 10, 1990 and March 1, 1991, the defendants had numerous contacts with representatives and employees of the plaintiff. In April and August, 1991, the defendants agreed to make payments to the plaintiff towards the arrearage they owed on the Promissory Note. In June, 1992 the defendants sent a letter to the plaintiff indicating that a lease had been signed which would provide CT Page 789 sufficient funds to pay the Mortgage and bring their arrearage current and that rental payments would commence on that lease on October 1, 1992. The plaintiff's representatives made various statements to the defendants to the effect that the plaintiff would "work with" the defendants concerning the default including a statement by Julie Fuchs, an Assistant Vice President of the plaintiff, on August 12, 1992, in which she indicated that if the documents which had been provided by the defendants "were in order that the matter could be successfully worked out under terms as proposed by the Defendants." 18, Counterclaim. Thereafter the defendants met with representatives of the plaintiff, who told the defendants that the plaintiff would not refinance the property and would not allow the arrearage to be paid over time, but that the defendants should refinance the property elsewhere. Shortly thereafter the plaintiff instituted this action.
Count One of the Counterclaim alleges that the plaintiff agreed to restructure the existing loan, ratified the agreement by accepting payments from the defendants, and breached the agreement. The plaintiff has moved to strike Count One because it is based on an alleged oral agreement which is unenforceable under the Connecticut Statute of Frauds, Connecticut General Statutes 52-550(a). A motion to strike challenges the legal sufficiency of a pleading. Practice Book, 152. In deciding a motion to strike the court must construe the claims or defenses in a manner most favorable to sustaining their legal sufficiency. Bouchard v. People's Bank, 219 Conn. 465 (1991). Although the allegations of the alleged agreement are quite vague, when Count One is construed in a manner most favorable to the defendants, it states a cause of action for breach of that agreement. In passing on a motion to strike, it is not proper for the court to consider whether the challenged allegations would withstand a defense such as the failure to comply with the requirements of the Statute of Frauds. The defendants are not required to plead evidence. Perhaps they will produce a writing confirming the alleged agreement. Perhaps the evidence will show that the terms of the agreement did not affect an interest in land. Without hearing the evidence, which is not the court's function on a motion to strike, the court cannot decide whether the alleged agreement is violative of the Statute of Frauds. Count One does state a cause of action for breach of an agreement and, therefore, the Motion to Strike Count One of the Counterclaim is denied. CT Page 790
Count Two alleges that the plaintiff intended to cause Montanari emotional distress, and that it did cause him such distress. The plaintiff has move to strike this count on the grounds that Montanari has failed to describe extreme and outrageous conduct by the plaintiff. Count Two does allege that the plaintiff's conduct was extreme and outrageous. However, the plaintiff claims that the underlying factual allegations of Count Two describe conduct which is legally insufficient to constitute extreme and outrageous conduct. While a motion to strike does admit all facts well pled, it does not admit legal conclusions. Mingachos v. CBS, Inc., 196 Conn. 91, 108 (1985). Liability for intentional infliction of emotional distress has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17,20 (1991). "[A] line can be drawn between the slight hurts which are the price of a complex society and the severe mental disturbances inflicted by intentional actions wholly lacking in social utility." Whelan v. Whelan, 41 Conn. Sup. 519,522 (1991). Although the conduct of the plaintiff as described in Count Two does not appear particularly atrocious, outrageous or extreme, it may not be characterized, as a matter of law, as being so trifling that it could never support a cause of action for intentional infliction of emotional distress. Therefore, the Motion to Strike Count Two is denied.
In Count Three of the Counterclaim the defendants allege that the conduct of the plaintiff in failing to agree, or breaching its agreement, to restructure the mortgage debt, violated the covenant of good faith and fair dealing present in the original Promissory Note. The concept of good faith and fair dealing is "[e]ssentially . . . a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. The principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." Magnan v. Anaconda Industries, Inc., 193 Conn. 558, 567
(1984). There is nothing in the original Promissory Note or Mortgage Deed which constitutes an agreement to "work with" the defendants if they default, nor do those documents contain any agreement to rewrite or restructure their terms in the event of default. Count Three is, therefore, ordered stricken.
The plaintiff may have a valid defense to Counts Four and CT Page 791 Five based on the Statute of Frauds, however, those Counts state causes of action for negligent misrepresentation, and intentional misrepresentation, respectively, and the Motion to Strike those counts is denied.
Count Six of the Counterclaim alleges that the plaintiff's conduct violated the Connecticut Creditors' Collection Practices Act, Connecticut General Statutes 36-243a et seq., (the "Act"). The Act consists of three sections: 36-243a, which contains definitions; 36-243b, which states that, "No creditor shall use any abusive, harassing, fraudulent, deceptive or misleading representation, device or practice to collect or attempt to collect any debt"; and 36-243c, which describes the powers of the state banking Commissioner to enforce the Act.
The Act does not explicitly provide the debtor with a private right of action. The legislative history of the Act indicates that the legislature rejected the inclusion of a private remedy in the Act. The three sections of the Act originated as Sections 1, 2, and 3 of P.A. 77-418. Early drafts of the bill included a Section 4, which provided for a private cause of action. Section 4 was removed for the reasons described by Senator Dinielli on the Senate floor:
 [T]he amendment removes section 4 which authorized the recovery of damages by the consumer for violations of the Act. It was felt that at the present time, the Commissioner, the Bank Commissioner, has enough powers to enforce the law and it would not be necessary for direct action by the consumer. 20 S.Proc., Pt. 5, 1977 Sess., p. 1989.
Based on the foregoing, it appears that no private cause of action exists under the Act and Count Six is hereby ordered stricken.
Count Seven of the Counterclaim alleges that the plaintiff has violated the Connecticut Unfair Trade Practices Act, Connecticut General Statutes 42-110a, et seq. ("CUTPA"). Our Appellate courts have not resolved the issue of whether CUTPA applies to banking activities. See Gaynor v. Union Trust,216 Conn. 458, 482 (1990). However, this court has considered the issue on many occasions. In National Westminster Bk., N.J. v. Giblin, No. CV91 0120523S (Jul. 23, 1992, Rush, J.) the court considered the issue in a well reasoned opinion: CT Page 792
 Under General Statutes 42-110b(b), the interpretations by the Federal Trade Commission ("FTC") serve as a guide to the construction of CUTPA and therefore our courts have repeatedly held that cases under the Federal Trade Commission Act serve as a loadstar for the interpretation of CUTPA. Russell v. Dean Witter-Reynolds, 200 Conn. 172, 179 (1986). However, banks are specifically exempted from the application of the Federal Trade Commission Act. 15 U.S.C. § 45a(2). "The exclusion of banks from the FTC's jurisdiction appears to have been motivated by the fact that, banks were already subject to extensive federal administrative controls." United States v. Philadelphia National Bank, 274 U.S. 321, 336, n. 11 10 L.Ed.2d 915, 83 S.Ct. 1715 (1963).
 CUTPA provides exemptions to its application by virtue of General Statutes 42-110c which provides, in pertinent part, "(a) Nothing in this chapter shall apply to: (1) Transactions or actions otherwise permitted under law as administered by any regulatory board or officer acting under statutory authority of the state or of the United States."
 The plaintiff in the present case is a "National" bank and is therefore subject to laws of the United States. See, 12 U.S.C. § 22, 30 and 35. Thus, the plaintiff is subject to federal regulations concerning unfair and deceptive acts and practices as provided for in 15 U.S.C. § 17a(f). ("Unfair is deceptive acts or practices by banks, savings and loan associations, or federal credit services; . . .")
 In Connelly v. Housing Authority, 213 Conn. 354, 362
(1990), the court, relying upon Russell, supra, noted that CUTPA is not applicable to transactions that are: (1) explicitly subject to a different and specifically applicable statutory remedy; and (2) are not among the types of transactions to which the Federal Trade Commission Act has been applied.
 Without expressing an opinion as the application of CUTPA to banking transactions subject only to state regulations, the court finds that the transactions alleged in the counterclaim are within the exemption set CT Page 793 forth in General Statutes 42-110c(a)(1) and within the rationale of the Russell and Connelly cases, supra.
 Accordingly, the court holds that activities of a national bank are not subject to the provisions of CUTPA and the Motion to Strike the counterclaim and all relief requested thereunder is hereby granted.
Based on the same reasoning employed by the court in National Westminster Bank, this court holds that CUTPA is not applicable to the plaintiff, a national bank. Therefore, the Motion to Strike Count Seven is granted.
The plaintiff has moved to strike all three special defenses filed by the defendants. The First Special Defense alleges:
 The Defendants admit that they are indebted to the plaintiff in an amount, but claim that the amount is significantly less than that claimed in the Complaint. The claim is for the damages owed to the Defendant for the Plaintiff's breach of contract, bad faith, intentional infliction of emotional distress and negligent infliction of emotional distress, as well as damages sustained for the breach of the Connecticut Unfair Trade Practices Act.
Practice Book 164 provides in relevant part:
 No facts may be proved under either a general or special denial except such as show that the plaintiff's statements of fact are untrue. Facts which are consistent with such statements which show, notwithstanding, that he has no cause of action, must be specially alleged.
Connecticut has recognized the following defenses to an action for a foreclosure of a mortgage: usury, Bizzoco v. Chintz,193 Conn. 304, 309, 476 A.2d 572 (1984); unconscionability of interest rate, Hamm v. Taylor, 180 Conn. 491, 495, 429 A.2d 946
(1980); duress or coercion and material alteration, Second New Haven Bank v. Quinn, 1 Conn. App. 78, 79, 467 A.2d 1252 (1983); payment, Connecticut Bank and Trust Company v. Dadi, 182 Conn. 530,532, 438 A.2d 733 (1980); discharge, Guaranty Bank Trust Co. v. Darling, 4 Conn. App. 376, 380, 494 A.2d 1216 (1985); fraud in the factum, Heating Acceptance Co. v. Patterson,152 Conn. 467, 208 A.2d 341 (1965); and lack of consideration, Sonnichsen v. Streeter, 4 Conn. Cir. 659 (1967). CT Page 794
The defendants attempt to characterize the First Special Defense as alleging payment. The court does not agree. The First Special Defense appears to be an attempt to assert that any amount due under the Promissory Note should be reduced by the amount recovered by the defendants on the Counterclaim. As such, it is not a recognized defense to a foreclosure action and is hereby ordered stricken.
The Second and Third Special Defenses do not deal with the making, validity or enforcement of the Promissory Note or Mortgage. They allege that the plaintiff breached the covenant of good faith and fair dealing by failing to allow the defendants to cure the arrearage and failed to act in a commercially reasonable manner in that statements made by the plaintiff's representatives intentionally misled the defendants. The facts alleged in these special defenses may show that the defendants have claims against the plaintiff, but they do not defeat the plaintiff's cause of action for foreclosure of the Mortgage in question.
Various Superior Court decisions have held that special defenses similar to those alleged by the defendant are inapplicable to a mortgage foreclosure proceeding. In New England Savings Bank v. High Ridge, Inc., Conn. L. Rptr. #5, 110 (November 10, 1991, Leuba, J.) the court held that the defense of "unclean hands", claiming that the bank failed to comply with the terms of a loan modification agreement, was inapplicable in a foreclosure action.
In Citytrust v. Kings Gate Developers, Inc., 2 Conn. L. Rptr. #639 (1990, Lewis, J.) the court held that a claim that the bank tortiously interfered with a contract to sell the mortgaged property at a price which would have satisfied the mortgage note was not a valid special defense under Practice Book 164.
For the reasons set forth above the Motion to Strike the Second and Third Special Defenses is granted.
By the Court,
Aurigemma, J. CT Page 795