[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for breach of contract by New England Rock Services, Inc. (NER) against Empire Paving, Inc. (Empire) and its bonding company, American Insurance Company, d/b/a Fireman's Fund Insurance Company (Fireman's).
NER claims it had a contract to provide drilling and blasting CT Page 10977 services for Empire on a project for the City of New London to provide services for the City on Niles Hill Road. Empire was the general contractor and NER the subcontractor for drilling and blasting. NER claims that after it commenced work on the project it determined that conditions at the site were not as represented by Empire and that it could not continue work unless Empire consented to pay on time and material basis, rather than on a set price of $29.00 per cubic yard with an estimated amount of 5,000 cubic yards. NER advised Empire that it could not complete the work because of the changed conditions and requested that Empire agree to amend the contract to allow NER to complete the project on a time and material basis. The parties then agreed that NER would be paid on a time and materials basis for the balance of the project. Thereafter, NER completed the work. It then submitted its bill to Empire in the amount of $58,686.63. Empire has refused to pay the bill.
Fireman's executed a labor and material bond under which it is obligated to pay all contracts and subcontracts. NER filed a notice of its claim demanding payment in the same amount it claimed from Empire. Fireman's breached its obligation to pay on the bond under C.G.S. § 49-41 et seq. NER claims damages of $58,686.63 from Fireman's. In addition, NER claims interest from both defendants in the amount of $9,304.53 through September 4, 1997 plus a per diem of $16.07 for every day thereafter.
Empire claims that there was a valid contract and that NER had no justification to modify it to a time and material type. It acknowledges that it agreed to the modification even though it believed there were no unforeseen circumstances or a new consideration. It felt compelled under duress and coercion to agree to the modification as the lesser of two evils. The other would have been delay in completing the project, assessment of liquidated damages by the city with the right to sue NER if it left the job.
Facts
The court finds that there was a contract as stated above. Empire agreed to the modification. The question is whether it was coerced into making the modification requested by NER or not.
Witnesses for NER testified that there was unanticipated and "horrendous" water problems at the site which prevented if from doing the work as anticipated. Empire had the duty to dewater the CT Page 10978 site according to the custom and the project specifications which required Empire to dewater the site. The court finds that Empire's failure to dewater the site forced NER to use a different method of drilling, the so-called "load behind the drill" method. However, NER was prevented from doing so by the City Fire Marshall. NER proved that the site could have been properly dewatered by using a well point system or having adequate pumps. Earl Tucker, President of Empire, testified that it tried to do so, but admitted this was done during the time of the previous blasting company, JJ. The court agrees that Empire's failure to dewater and the inability to load behind the drill constituted new circumstances not anticipated by the parties at the time the original contract was signed.
The court rejects the claims of Empire that NER had notice of the water problems prior to the start of the work. The court also rejects its claim that there were no unusual water problems actually in existence. Testimony at the trial made it more than evident that there were water problems. The court also rejects Empire's argument that NER should have anticipated the city's refusal to let it use the "load behind the drill" method of drilling, since NER claimed that it had always been permitted to use this method in other areas and that this was the first time they were prevented from doing so.
Discussion
"Parties may alter any term of an existing contract by entering into a subsequent contract. Mutual promises qualify as sufficient consideration for a binding contract . . . Although contracts modifying earlier ones must be supported by new consideration . . . mutual promises are sufficient consideration to bind parties to a modification," Harris Calorific Sales v.Manifold Sys., 18 Conn. App. 559 (1989). Here Empire agreed to the modification and in reliance on that agreement NER completed the work.
The court finds that Empire's agreement to modify the method of payment was not made under duress, but rather was a calculated business decision. NER's demand for a time and materials agreement was justified under the circumstances and does not constitute duress as a matter of law. Second New Haven Bank v.Quinn, 1 Conn. App. 78 (1983).
"It is inherent in duress that the acts or threats claimed to CT Page 10979 constitute it should be wrongful. 2 Restatement (First) Contracts Sec. 492." The defendant signed a promissory note because she deemed it in her best interest to do so. The court found that since there was no wrongful act by the plaintiff, no duress was proven. Second New Haven Bank, supra, p. 82.
The court finds that the case of Dills v. Enfield,210 Conn. 705 (1989) is not analogous to the present case. In that case the plaintiff claims he was discharged from his duty to submit construction plans to the defendant because he could not obtain financing. He claimed the doctrine of supervening impracticability discharged his duty to submit the plans. The court rejected this agreement and found for the defendant. In the instant case, there was a modification of the contract by the parties and a claim of coercion which issue was not involved in the Dills case.
An agreement is not rendered invalid on the ground of economic duress where the defendant threatened termination of a construction contract when it knew termination would result in economic collapse of the corporate plaintiff. The court held that defendants threatened cancellation was within its contractual rights. Stewart M. Miller Const. Co. v. New York Tel. Co.,40 N.Y.2d 955, 390 N.Y.S.2d 817 (1976).
With regard to NER's claim of promissory estoppel, the law requires two essential elements to be proven: (1) the party against whom estoppel is claimed must be shown to have done or said something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and (2) the other party must be shown to have changed its position in reliance on those facts thereby incurring some injury. In the case of Newman v. CFC Construction, 236 Conn. 750, 768 (1996), the court found that the defendants had induced the plaintiff to continue working on the city hall project after the date of the conclusion of the project and were thus liable to pay the plaintiff for the extra work done. Supra, p. 768. Here NER completed the job based upon the promise of Empire to pay on a time and materials basis.
The court finds that NER has proven its case against Fireman's pursuant to C.G.S. § 49-41 et seq. The plaintiff has established the procedural prerequisites for a valid bond claim, including labor and materials on the project and proper notice to the surety and Empire. Fireman's failed to prove its CT Page 10980 special defense of lack of notice.
Accordingly, judgment shall enter in favor of NER against Empire and Fireman's in the amount of $58,686.63, plus interest in the amount of $9,304.53 as of September 4, 1997, plus per diem interest of $16.07 up to the date of judgment, plus costs.
D. Michael Hurley Judge Trial Referee