BURKE E. NELSON *v.* CAROLYN L. NELSON
(4627)

BORDEN, DALY and NORCOTT, Js.

Argued November 19, 1987—decision released February 2, 1988

*Eva M. DeFranco,* with whom, on the brief, were *Lloyd Cutsumpas* and *Paula Flanagan,* for the appellant (plaintiff).

*Jean S. Ferlazzo,* with whom, on the brief, was *Marcella Gereg,* for the appellee (defendant).

BORDEN, J. The plaintiff appeals from rulings on two postjudgment motions to enforce the terms of a dissolution decree. The plaintiff claims that the trial court erred (1) in refusing to compel the defendant to cooperate in securing a second mortgage on the parties' former marital residence, (2) in finding the plaintiff in contempt for failure to make certain alimony and support payments, and (3) in ordering the plaintiff to make certain postmajority support payments not agreed to by the parties. We find error with respect to both rulings from which the plaintiff has appealed.

The marriage of the parties was dissolved in 1980. Pursuant to the separation agreement of the parties and the uncontested judgment of dissolution rendered in accordance therewith, the parties will continue to own the marital home jointly as tenants in common until 1995, with the defendant having exclusive use and possession of the home. The plaintiff was awarded a 43 percent interest in the home, but he is not entitled to receive payment therefor until 1995. Prior to that time, the plaintiff is permitted to take a second mortgage "on the house" to the extent of 20 percent of a determined market value.[1] The parties' separation agreement contains an "Execution of Documents" provision requiring "[e]ach of the parties [to] execute and deliver to the other party any documents that may be reasonably required to accomplish the intentions of this Agreement and [to] do all the necessary things to this end." Although this provision was not incorporated into the judgment of dissolution, it did survive the judgment.

In 1985, the plaintiff moved to compel the defendant's participation in a second mortgage on the home, claiming that without securing such financing he would be unable to make future payments for the education of their majority-age children. The trial court denied

---

[1] This provision of the judgment of dissolution and of the separation agreement, referred to hereafter as the "second mortgage provision," states: "The Husband will be permitted to take out a second mortgage on the house after September 1, 1984, but the maximum amount of any second mortgage shall not exceed twenty percent (20%) of the current market value as determined by the above appraisal method. The Husband agrees that he will assume the cost of taking out and satisfying any second mortgage and in the event of a default on the part of the Husband in the payment of any second mortgage, the amount of the said default will be deducted from his forty-three percent (43%) interest in the value of the home. In the event that the Husband dies during the time any second mortgage is outstanding, the Wife shall be permitted to deduct the amount of the outstanding second mortgage from the forty-three percent (43%) interest of the Husband. If the Husband is in arrears in any of the alimony payments stated above, the Wife shall be entitled to deduct the amount of those alimony arrearages from his forty-three percent (43%) interest in the home."

the motion, finding that the express terms of the agreement did not require the defendant to participate in any second mortgage, and that it would be inequitable to do so.

At the same time, the defendant moved to hold the plaintiff in contempt for his late payment of alimony and late payment of college tuition for the children. Despite the plaintiff's objection that only the representations of counsel and no sworn testimony had been presented to the court, the trial court ordered "that if the plaintiff's delay in paying tuition for his daughter has caused her to miss a course, thereby causing her to take another semester, then the plaintiff shall pay for the next semester [and] $150 attorney's fees shall be paid to the defendant by the plaintiff."

The plaintiff appeals both from the denial of the motion to compel and from the order on the motion for contempt.

I

THE MOTION TO COMPEL

The plaintiff claims that the trial court erred by denying his motion to compel, because the dissolution judgment and separation agreement require the defendant to join with the plaintiff in the second mortgage by including in the mortgage her 57 percent interest in the home. We agree.

By his motion to compel, the plaintiff sought an interpretation of the judgment of dissolution. "A judgment rendered in accordance with the stipulation of the parties is to be construed and regarded as a binding contract. *Caracansi* v. *Caracansi*, 4 Conn. App. 645, 650, 496 A.2d 225, cert. denied, 197 Conn. 805, 499 A.2d 56 (1985). Construction of such an agreement is an issue of fact to be resolved by the trial court as the trier of fact, and subject to our review under the clearly erro-

neous standard. See *Lavigne* v. *Lavigne,* 3 Conn. App. 423, 427, 488 A.2d 1290 (1985)." *Mihalyak* v. *Mihalyak,* 11 Conn. App. 610, 616, 529 A.2d 213 (1987). Although the entire agreement was not specifically incorporated into the judgment, because it was approved by the court and survived the judgment it is appropriate to use the agreement as an aid to the interpretation of the judgment.

Appellate review under the clearly erroneous standard is a two-pronged inquiry: "[W]e first determine whether there is evidence to support the finding. If not, the finding is clearly erroneous. Even if there is evidence to support it, however, a finding is clearly erroneous if 'in view of the evidence and pleadings in the whole record [this court] is left with the definite and firm conviction that a mistake has been committed.' " *Buddenhagen* v. *Luque,* 10 Conn. App. 41, 45, 521 A.2d 221 (1987), quoting *Doyle* v. *Kulesza,* 197 Conn. 101, 105, 495 A.2d 1074 (1985). See also *Web Press Services Corporation* v. *New London Motors, Inc.,* 205 Conn. 479, 483, 533 A.2d 1211 (1987). In the present case, even if there is evidence in the record to support the trial court's determination, our review of the record as a whole leaves us with the definite and firm conviction that the trial court has failed to interpret the judgment of dissolution correctly.

"[I]nterpretation of an agreement is a search for the intent of the parties." *Lavigne* v. *Lavigne,* supra, 427–28. It is true that the second mortgage provision of the dissolution decree, which tracks similar language in the separation agreement, does not expressly require the defendant to help execute the plaintiff's second mortgage. On the other hand, neither does it expressly state that the defendant is not required to help execute the plaintiff's second mortgage. "[W]here the text of an agreement reasonably allows for varying interpretations—whether by the inadvertence or design

of the draftsman—the need for judicial construction cannot, and may not, be avoided." *Wards Co.* v. *Stamford Ridgeway Associates,* 761 F.2d 117, 120 (2d Cir. 1985). Because the judgment and the parties' agreement here are ambiguous regarding the defendant's participation in any second mortgage, "[t]he intention of the parties . . . is to be determined by a fair and reasonable construction of the language used interpreted in light of the situation of the parties, the circumstances connected with the transaction, the motives of the parties and the purposes which they sought to accomplish." *John F. Epina Realty, Inc.* v. *Space Realty, Inc.,* 194 Conn. 71, 77–78, 480 A.2d 499 (1984); *Stelco Industries, Inc.* v. *Bette,* 2 Conn. App. 17, 20, 475 A.2d 1105 (1984).

We first note that the second mortgage provision refers to such a mortgage "on the house." In the context of the second mortgage provision, read together with the entire judgment and agreement, that phrase clearly refers to the entire title to the house, not the parties' respective interests therein.

From the express language of the second mortgage provision, it is also evident that the parties contemplated that the plaintiff very likely would take out a mortgage on the house after September 1, 1984. This date corresponds to the first year in which both children would be of college age. The evidence before the court showed that the intent of the mortgage provision was, at least in part, to provide the plaintiff with the ability to finance the postmajority education of the parties' children. Additionally, we recognize, as did the trial court, that mortgage lenders generally do not give second mortgage loans on jointly owned property unless both co-owners are parties to the transaction.

Furthermore, the court failed to give sufficient attention to the execution of documents clause contained in

the agreement. This provision, often present in separation agreements, is intended to facilitate the many forms of property transfer, and other aspects of rearranged personal relations between the parties, which are contemplated by other provisions in the separation agreement. In light of the joint ownership of the property and the difficulty in obtaining a second mortgage without both owners' participation, the defendant's cooperation and assistance in obtaining that financing was "reasonably required to accomplish the intentions of [the] agreement."

The defendant argues that the language of the execution of documents clause "contains no provisions imposing a new obligation upon the defendant." While it is true that this provision does not create the defendant's obligation to sign a second mortgage, it furthers our interpretation of the meaning of the relevant language of the second mortgage provision. The presence of this provision convinces us that the parties would not be expected to set out the defendant's obligation to sign documents related to a second mortgage with any more specificity than they did.

Finally, the court's concern that a contrary interpretation of the parties' agreement would obligate the defendant on a second mortgage and would thereby imperil the value of the marital property awarded to her in 1980, ignored other aspects of the second mortgage provision. First, the amount of any second mortgage is limited to 20 percent of the value of the home. Additionally, the language of the judgment which authorizes the plaintiff to take out a second mortgage also makes explicit that the plaintiff alone is responsible for payment of any costs associated with that mortgage and for satisfaction of the mortgage debt. Further, the terms of the judgment contemplate that any default on that mortgage will be deducted from the plaintiff's interest in the home as set forth in the decree.

Consequently, it is clear that the separation agreement and the judgment of dissolution ensure that the defendant will be substantially protected from the adverse financial effects of the plaintiff's death or default, if any. This set-off against the final disposition of the property effectively insulates the defendant from having her equity in the home impaired by the plaintiff's decision to seek a second mortgage and any failure to make payment thereon.

Under the circumstances of this case, to permit the plaintiff to seek a second mortgage but to deny him the means to obtain that result would frustrate the intention of the parties, not further it. We do not believe that the parties intended such a result. See *American Fabrics Co.* v. *United Textile Workers of America*, 12 Conn. App. 642, 648, 533 A.2d 579 (1987) (between two possible interpretations of contract, courts prefer the more equitable and rational interpretation); *Game-A-Tron Corporation* v. *Gordon*, 2 Conn. App. 692, 694–95, 483 A.2d 620 (1984).

We therefore conclude that the second mortgage provision of the dissolution decree requires the defendant to cooperate with the plaintiff in securing a second mortgage by participating in any application for such a mortgage, by executing and delivering a mortgage deed for the home and by performing any other acts which might be reasonably required by a mortgage lender from a co-owner not actively seeking the financing.[2] Accordingly, the court's conclusion to the contrary was clearly erroneous; see *Buddenhagen* v. *Luque*, supra; and cannot stand.

---

[2] Although the plaintiff's motion to compel sought to require the defendant to execute both a mortgage deed and note, we need not decide whether the defendant is now required to sign a promissory note as well as the mortgage deed. Certainly the plaintiff is obligated at a minimum first to make all good faith efforts to arrange a mortgage transaction in which he is the sole obligor on the note to be secured by the mortgage executed by both

## II

### THE MOTION FOR CONTEMPT

The defendant sought to have the court hold the plaintiff in contempt for the plaintiff's failure to comply with certain orders of the court requiring payment of alimony and tuition in August, 1985. At the hearing on the motion, no testimony was presented to the court. Instead, the defendant's counsel represented that the plaintiff was late in making these payments. She also stated that because of the delay in the payment of tuition, the parties' daughter was unable to register for a foundation mathematics course, possibly necessitating an additional semester of college. On the basis of this information, and over the plaintiff's objection that no evidence had been presented, the court ordered the plaintiff to pay for an extra semester of the daughter's college education, if additional enrollment becomes necessary, and to pay $150 toward the defendant's attorney's fees.

In his second claim of error, the plaintiff contends that without testimony from any witness the court could not make a finding of contempt. See *Cologne* v. *Westfarms Associates,* 197 Conn. 141, 496 A.2d 476 (1985). Our careful review of the record, however, reveals that the court never made a finding of contempt with respect to the plaintiff's late alimony and tuition payments; instead, the court simply found that its prior orders had not been complied with and entered remedial orders requiring payment of tuition, if necessary, and payment of attorney's fees. Therefore, since no

parties. Such an interpretation of the mortgage provisions is consistent with the obvious intent of the parties to minimize the defendant's risk on the mortgage transaction. It is only if the plaintiff establishes that such efforts are unavailing that the defendant will be obligated to execute the note as well.

finding of contempt was made, this claim of error is without merit.

In his third claim of error, the plaintiff challenges the court's remedial order of payments entered pursuant to the motion for contempt. The plaintiff argues that the trial court's order of payments was erroneous (1) because the court lacked subject matter jurisdiction to require the postmajority support ordered here, and (2) because the order was not based upon competent evidence. For the latter reason only, we agree that the court erred in entering the order for payment of additional college expenses and of counsel fees.

To understand this claim, some explanation of the postmajority support provisions of the parties' separation agreement and dissolution decree is necessary. The written separation agreement of the parties required the plaintiff "to pay for the tuition, room and board . . . of the children of the parties for their college education and while the children are attending a recognized college or university on a regular basis leading to an academic degree in the usual time and manner prescribed by the college or university and providing they are doing satisfactory work as determined by the college or university." This requirement was incorporated into the judgment of dissolution. In August, 1985, this support provision of the judgment was modified by the court, pursuant to the oral and written stipulations of the parties. The parties agreed in writing "that the college education provision of their separation agreement dated February 22, 1980, be amended to provide that the [plaintiff's] liability shall not exceed $7000 per year per child. The balance of the clause shall remain in full force and effect." At the hearing on the modification, the parties agreed orally and the court ordered that the plaintiff's obligation to pay tuition, room and board costs "is limited . . . [to]

a four year B.A. degree, so he is responsible for four scholastic years."

The plaintiff first argues that the court's order that the plaintiff be responsible for additional college expenses of his daughter due to her potential late enrollment is invalid because the court "had no authority to order post age eighteen support without the agreement of the parties" and because it "expand[ed] the parties' post-majority agreement beyond four years of college." We disagree.

"[A]greements for the support of adult children . . . may be the subject of orders of the court if the agreements are in writing." *Arseniadis* v. *Arseniadis,* 2 Conn. App. 239, 246, 477 A.2d 152 (1984).[3] Here, the written separation agreement and the written modification agreement limited the duration of the plaintiff's obligation to pay tuition, room and board costs to the time during which each child was "attending a recognized college or university on a regular basis leading to an academic degree in the usual time and manner prescribed by the college or university." Clearly, the plaintiff's obligation to pay tuition, room and board costs for an additional semester in order to permit his daughter to complete her degree requirements is within the terms of the modified judgment based upon the parties *written* stipulations.

The "four years" limitation upon payment of these costs appears only in the oral agreement recorded in open court and incorporated into the court's order of

---

[3] General Statutes § 46b-66 provides in pertinent part that, where the parties to a dissolution action have submitted a support agreement to the court, "[i]f the agreement is in writing and provides for the care, education, maintenance or support of a child beyond the age of eighteen, it may also be incorporated or otherwise made a part of any such order and shall be enforceable to the same extent as any other provision of such order or decree, notwithstanding the provisions of section 1-1d."

modification. We need not decide whether this limitation, not agreed to in writing, is valid; see id.; because it is obvious that any additional semesters beyond four calendar years was contemplated by the *oral* agreement as well, if such semester proved necessary in order to secure the completion of the requirements of a bachelor's degree program.[4] Accordingly, under either version of the education provision as modified, the plaintiff is required to pay for any additional semester necessitated by the particular degree requirements of the college or university attended by the parties' daughter. The court therefore had authority to require the postmajority support payments ordered here.

The plaintiff also argues that the order of payments, based entirely upon representations of the defendant's counsel that payment was late, and where the plaintiff's counsel disputed both that fact and the reason for

---

[4] At the August 2, 1985 hearing the "four year" limitation was brought up in the following manner:

"Ms. Flanagan [Counsel for plaintiff]: In terms of the husband's responsibility for education, that responsibility is limited to tuition, room and board costs for a four year degree.

"The Court: Right. But if they're in a work-study program, it's the total of the B.A. degree because they don't pay during the work part of it because they get paid. It's like Northeastern's program.

"Ms. Flanagan: Okay. And the understanding is that Mark has one more year and that Jill has three years.

"The Court: Three scholastic years . . . .

* * *

Ms. Ferlazzo [Counsel for defendant]: We just don't have any idea whether there might be a year or semester she's out for some reason or something like that, so —

"The Court: He's responsible for four scholastic years. So if she's off—some kids get sick and take six months off or a year off—you're responsible for four scholastic years to allow them to get their B.A. degree . . . . Do you understand that?

"Mr. Nelson: Yes.

"The Court: B.A. degree we're working on. You're not responsible for graduate degrees.

"Mr. Nelson: I agree."

any alleged delay in payment, was without evidentiary support and therefore an abuse of discretion. We agree.

In a contempt proceeding, even in the absence of a finding of contempt, a trial court has broad discretion to make whole any party who has suffered as a result of another party's failure to comply with a court order. *Papa* v. *New Haven Federation of Teachers,* 186 Conn. 725, 737, 444 A.2d 196 (1982). Such court action, however, must be supported by competent evidence. See *Cologne* v. *Westfarms Associates,* supra. Generally, when the exercise of the court's discretion depends on issues of fact which are disputed, " 'due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses.' " *Lampasona* v. *Jacobs,* 7 Conn. App. 639, 642–43, 509 A.2d 1075 (1986), quoting *Standard Tallow Corporation* v. *Jowdy,* 190 Conn. 48, 56, 459 A.2d 503 (1983).

Here, the factual issues of whether the payments were late and of the reasons for any such lateness were disputed. The court did not hold an evidentiary hearing to resolve those issues. Therefore, where the order pursuant to the motion for contempt was supported by only the representations of counsel and proper objection was made thereto on that basis, the court erred in entering an order pursuant to the motion for contempt.

There is error, the order denying the plaintiff's motion to compel is set aside and the matter is remanded for further proceedings consistent with this opinion; the order entered pursuant to the defendant's motion for contempt is set aside and the matter is remanded for a new hearing on that motion.

In this opinion the other judges concurred.