[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION 
The defendant filed the subject motion for contempt and motion to modify child support on August 23, 1994. After hearing testimony and reviewing exhibits in this matter over the course of four days beginning December 21, 1995 and ending February 6, 1995, the court finds the following facts and issues the following orders.
The defendant currently resides in Florida with the three minor children issue of her marriage with the plaintiff. judgment dissolving the marriage of the parties was initially entered on January 3, 1989. The judgment was subsequently modifier pursuant to an agreement between the parties on September 7, 1989. The defendant retained primary physical custody of the three minor CT Page 1286-Q children with the plaintiff receiving substantial visitation, particularly during spring, summer and Christmas vacations. The plaintiff was ordered to pay child support during the school year in the amount of $30 per child per week for a total of $90 per week. The child support payments were suspended during any summer periods when the children were residing with the plaintiff. In addition, child support automatically increased to $131 per week if the plaintiff failed to have the children visit with him during the spring, summer or Christmas vacations. The increased child support of $131 was to continue until the next scheduled visitation was fulfilled.
The plaintiff has not fully complied with his visitation obligations. He also has been sporadic in his payment of child support to the defendant.
With respect to visitation, the plaintiff, beginning in the spring of 1991, stopped having his children visit with him during their spring school vacation. They did not visit with him in the spring of 1991, 1992, 1993, or 1995. In addition, the plaintiff failed to comply in 1993 with the parties agreement concerning Christmas vacation. The agreement required the children to visit with the plaintiff from December 25 until the day before school commenced in January. Instead, the plaintiff saw the children for only three days during this period while he was vacationing in Florida.
The plaintiff has not satisfied his obligation to pay child support. He has failed to make the following payments required by the modification entered on September 7, 1989:
• He paid no child support from October 2, 1989 through June 4, 1990, leaving $3,240 due and owing (36 weeks x $90).
• He paid no child support from October 8, 1990 through November 19, 1990, leaving $630 due and owing (7 weeks x $90).
• He failed to pay the increased child support of $131 weekly from March 25, 1991 through June 10, 1991, resulting from his missed visitation during spring vacation, leaving $492 due and owing (12 weeks x $41).
• He paid no child support for the week of August 26, 1991. CT Page 1286-R
• The check in the amount of $720 that he issued for child support for the period from November 4, 1991 through December 30, 1991 bounced and was never reissued.
• He failed to pay the increased child support of $131 weekly from April 13, 1992 through June 22, 1992, resulting from his missed visitation during spring vacation, leaving $492 due and owing (12 weeks x $41).
• He paid no child support for the weeks of December 21, 1992 and December 28, 1992.
• He failed to pay the increased child support of $131 weekly from April 5, 1993 through June 14, 1993, resulting from his missed visitation during spring vacation, leaving $451 due and owing (11 weeks x $41).
• He failed to pay the increased child support of $131 weekly from December 27, 1993 through June 20, 1994, resulting from his missed visitation during Christmas vacation, leaving $1,066 due and owing (26 weeks x $41).
• He failed to pay child support of $90 for the week of December 26, 1994.
• He failed to pay child support from January 2, 1995 through February 20 1995, resulting in $720 due and owing (8 weeks x $90.)
• He failed to pay the increased child support of $131 weekly from April 17, 1995 through June 12, 1995, resulting from his missed visitation during spring vacation, leaving $369 due and owing (9 weeks x $41).
• He failed to pay any child support from June 19, 1995 through July 3, 1995 (3 weeks x $131).
The defendant also seeks payment of $131 per week in child support for the period from July 10, 1995 through December 18, 1995. She claims that she is entitled to the increase because two of the children did not visit with the plaintiff during the summer of 1995.
It is undisputed that the plaintiff was willing to have CT Page 1286-S all three children visit with him. However, he assented to the wishes of the two older children to stay in Florida due to their summer school commitments.
The modification agreement is ambiguous as to the effect on child support should some of the children not visit with the plaintiff during the summer. The purpose of the increased child support payment was to encourage visitation by the plaintiff. Since he was ready and willing to have all three children visit with him over the summer, he should not be penalized for acceding to their desire to stay in Florida.
The plaintiff also improperly deducted $288.50 in August, 1993 from a child support check sent to the defendant. The amount represented one-half the cost of dental expenses incurred by the plaintiff for the children during a visit with him. The expenses should not have been incurred by the plaintiff because he failed to properly consult with the defendant before incurring the expenses and they constituted non-emergency expenses that could have been covered by the defendant's dental insurance.
The total amount of the arrearage found to be owed the defendant by the plaintiff is $9,221.50.
The plaintiff's multiple failures to pay the above child support were wilful acts. He had the ability to pay but chose not to do so.
During the period of his nonpayment, the plaintiff owned and operated a video production business which had a gross annual income ranging from a low of $20,166 to a high of $42,724 according to the plaintiff's testimony. The plaintiff testified that his net income during each of these years was extremely low. For example, he stated that his net annual income for the years 1989 and 1990 was $97 and $443, respectively. However, his testimony on this subject and other matters relating to the payment of child support was not believable.
Moreover, the plaintiff had other resources available to him for the payment of child support which he chose not to use for that purpose. On September 1, 1989, the marital home in West Haven was sold for $130,000. The plaintiff received $10,195 from the closing. Yet approximately one month later, on October 2, he did not pay child support and continued to fail to pay for 36 weeks. CT Page 1286-T
In May of 1995, he sold a condominium that he owned at 74 East Gate Lane in Hamden for $80,000. He received $14,429 at the closing held on May 18, 1995. He did not use these funds to pay the back child support he owed. Moreover, once again, approximately one month later on June 19, 1995, he failed to pay child support for the next three weeks.
The plaintiff is found to be in contempt of the court's order to pay child support. Because of his contemptuous conduct, the defendant was forced to incur substantial expenses to prosecute her motion for contempt. She has requested that the court require the plaintiff to reimburse her for those expenses, including her attorney's fees, the cost of her air fare from Florida to Connecticut, and her lost wages.
She testified that her bill for attorneys fees was $4,262. Her attorney submitted an affidavit showing an hourly rate of $125 per hour and an itemization of 34.10 hours spent in pursuit of the motion for contempt. These hours do not include any time spent during the four days of hearings on the motion for contempt. The defendant also testified as to the cost of her air travel to Connecticut and the cost of the service of her motion for contempt.
"A civil contempt is one in which the conduct constituting the contempt is directed against some civil right of an opposing party and the proceeding is initiated by him." Stoner v. Stoner,163 Conn. 345, 359 (1972) (quoting State v. Jackson, 147 Conn. 167,168-169). "In a contempt proceeding, even in the absence of a finding of contempt, a trial court has broad discretion to make whole any party who has suffered as a result of another party's failure to comply with a court order." Nelson v. Nelson, 13 Conn. App. 355,367 (1988). See also Clement v. Clement, 34 Conn. App. 641,647 (1994). The court is also empowered by statute to award reasonable attorney's fees in this matter. Conn. Gen. Stat. § 46b-62.
After considering the respective financial abilities of the parties and the criteria set forth in § 46b-82, the court finds $5,000 to be a reasonable attorney's fee for the prosecution of the defendant's motion for contempt and orders the plaintiff to pay said sum to the defendant. The plaintiff is also ordered to pay the defendant $846 in reimbursement for three of the plane flights that she was required to take in order to prosecute this action. CT Page 1286-U
The defendant also asserts that the amount of the child support order should be increased because the plaintiff's earnings have increased. Although the defendant urges the court to look back to the income of the plaintiff at the time of the original dissolution decree on January 3, 1989, the appropriate date from which to determine whether a substantial change in circumstances has occurred is the date of the last modification of the judgment.Borkowski v. Borkowski, 228 Conn. 729 (1994). The dissolution judgment was modified by the parties on September 7, 1989 when they filed their stipulated agreement substantially changing the terms of the initial decree.
In September of 1989, the plaintiff was employed, as he is now, as the owner of his own video production company. The plaintiff testified that his gross income for the calendar year 1989 was $25,018. He stated that his net income for that period was $97. While the court views much of the plaintiff's testimony on his income with great skepticism, his net income for 1989 was significantly less than in later years because it was his first full year after the start-up of his business in November, 1988.
The plaintiff testified that his gross annual income for the year 1995 was $20,166. He asserted that his net income for that year was $7,965. By the plaintiff's own admission, his net income has substantially increased since the date of the last modification.
In addition, the defendant's income has fallen significantly since the stipulated agreement. The agreement itself was explicitly conditioned upon the defendant earning an annual salary of $24,700 at Wright Plastering Company. The defendant is currently not working at Wright Plastering Company.
According to the financial affidavit submitted on December 21, 1995, the defendant's current gross income is $23,140 annually. However, this income includes $180 per week that the defendant receives from illegally renting rooms in her house. She testified that she rents the rooms because the plaintiff's failure to pay child support has resulted in insufficient income to pay her bills. She has been ordered by the municipality to cease this practice and she should do so forthwith. Therefore, the rental income should not be included in her income for the purposes of determining monies available to her for the support of her children. Deducting the illegal income of $180 per week leaves the defendant with a CT Page 1286-V gross annual income of $13,780, a substantial change from the income contemplated in the stipulated agreement.
Due to the increase in the plaintiff's net income and the decrease in the defendant's available income since the date of the last modification in September, 1989, a substantial change in circumstances exists which requires this court to decide whether and to what extent the child support order should be modified. "Once a trial court determines that there has been a substantial change in the financial circumstances of one of the parties, the same criteria that determine an initial order of alimony and support are relevant to the question of modification. This requires the court to consider without limitation, the needs and financial resources of each of the parties and their children as well as such factors as health, age and station in life." Hardistyv. Hardisty, 183 Conn. 253, 258-259 (1981). (Citations omitted.) Specifically, the court should examine the statutory criteria outlined in § 46b-84 with respect to the award of child support. "It should evaluate the circumstances of the parties as they exist at the time of the modification hearing, compare them to what they were at the time of the last court order and arrive at a fair and equitable determination." Borkowski v. Borkowski, 228 Conn. 729,747 (1994).
In any determination of child support, the child support guidelines "shall be considered." Conn. Gen. Stat. § 46b-215b. The guidelines shall be considered in addition to and not in lieu of the criteria for child support awards established in section 46b-84. Id. See also Battersby v. Battersby, 218 Conn. 467 (1991).
The plaintiff's testimony as to his income was inconsistent and not credible. His financial affidavit which was dated December 21, 1995 stated that his gross annual income was $19,604, with business expenses of $9,516 and net income of $10,036. He asserted at the hearing that his gross annual income for 1995 was $20,160, with business expenses of $12,295, leaving net income of $7,965.
At the hearing, the plaintiff testified that he included in his business expenses the sum of $5,877 for the purchase of new video equipment. He offered no evidence as to the appropriateness of deducting the entire amount in 1995 as opposed to depreciating the expense over time. In fact, he stated that his accountant may not approve the practice. He also submitted no evidence that this purchase was a reasonable and necessary expense of the business. Under the child support and arrearage guidelines only "legitimate" CT Page 1286-W expenses may be deducted from earnings from self-employment. Child support and arrearage guidelines, section 46b-215a-1(11)(A)(ix). Since no such showing has been made, this expense should be added back to the net income of $10,036 claimed on the plaintiff's financial affidavit. Therefore, the court finds the plaintiff's net annual income to be $15,913.
Applying the child support and arrearage guidelines to the plaintiff's net income of $15,913 and the defendant's net income of $9,724 (after deducting the $180/week of illegal income) results in a weekly child support obligation of $135 for the plaintiff. After considering the statutory criteria of § 46b-84, I find this amount to be appropriate in this case. The plaintiff's child support obligation is hereby modified to $135 per week, effective as of the date of this decision.
Pursuant to the child support and arrearage guidelines, the plaintiff is required to pay 20% of his weekly current support order toward the arrearage, provided the sum of the weekly payments for current support and arrearage shall not reduce the plaintiff's retained net weekly income below the minimum self-support reserve of $145 per week. Section 46b-215a-4(b). Since the sum of 20% of his current support order and his current support order would violate this rule, the plaintiff is ordered to pay $25 per week on his arrearage until it is paid in full.
In light of the above orders, the dissolution judgment is also modified to delete the requirement that the amount of the child support paid by the plaintiff shall increase if he fails to visit with the children.
Jon M. Alander, Judge CT Page 1287