[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff has filed for a dissolution of her marriage with the defendant. The court heard testimony over the course of nine days of trial. Based upon the evidence presented, the court makes the following findings and issues the following orders.
The plaintiff and the defendant married on August 23, 1990. The plaintiff has continuously resided in the state of Connecticut for at least twelve months prior to bringing this action. The marriage has broken down irretrievably. There are no minor children born as a result of the marriage.
The plaintiff is forty two years old and for fifteen years was employed as a legal receptionist. She is two courses shy of obtaining her undergraduate degree.
The defendant is forty one years old. He is a certified public accountant and a partner in the accounting firm of Bailey, Schaefer and Errato.
The plaintiff has a herniated disc in her back. This condition does not prevent her from full time employment. The defendant is in good health.
The parties married relatively later in life; the plaintiff was thirty-seven and the defendant was thirty-six. Each of the parties was also married previously. The plaintiff has a child, who is over the age of 18, from her former marriage. CT Page 1598-K
Each of the parties was employed full time in their chosen careers at the time of their marriage. Their careers were not interrupted or adversely affected in any way by their marriage.
Each of the parties also came into the marriage with their own resources which were not insubstantial. The plaintiff owned a home, which she continues to own, at 42, Indian Woods Road in Branford. The house is presently valued at $165,000. She was also the beneficiary of a Spray Trust fund established by her father. In addition, she had premarital assets in the form of stocks and bank accounts currently valued at $68,000. At the time of their marriage, the defendant was a partner in an established and successful accounting firm. He had been in the accounting field for 18 years and a certified public accountant for thirteen years. His accounting practice provided him with a substantial annual income exceeding $100,000. He had ownership interests in various real estate in the area.
The parties' marriage is of relatively short duration. They have been married for not quite six years and separated for two and one-half of those years.
The parties provided the court with conflicting views on the quality of the marriage and the reasons for the marital breakdown. The plaintiff testified that their marriage was "wonderful" during the first two years and that it began to unravel when her father took seriously ill in January 1992. At that time, she stated that she was required to spend much of her time and attention on arranging and maintaining the appropriate care for her father. She claimed that her need to attend to her father's illness resulted in deep resentment on the part of the defendant and ultimately tore their relationship apart.
The defendant testified that the marriage was hellish from the very beginning. According to the defendant, they continually fought over money. He was also troubled by the perpetual conflict, particularly between the plaintiff and her daughter, that seemed to occupy the plaintiff's life. He stated that, due to various actions of the plaintiff, he never felt comfortable living in her house. He believed that the plaintiff was consumed by her father's needs and neglected his own.
Throughout the course of the trial, the time and attention spent by the plaintiff on her father's care was the subject of CT Page 1598-L much dispute. The plaintiff emphasized the positive aspects of her actions. Her father was very ill and in need of constant care. Her mother was incapable of caring for him and it fell to the plaintiff to look after him. The defendant stressed the negative aspects of the plaintiff's relationship with her father. He felt that her preoccupation with his care was unnecessary. Her father had personal care attendants caring for him twenty four hours each day, seven days each week. She became her father's "surrogate wife" and failed to provide the defendant with any emotional support.
Whether for understandable reasons or not, the relationship between the plaintiff and the defendant was far from idyllic. There was much conflict, little understanding and little support. For the most part, they kept their premarital assets separate and battled over ongoing financial matters. There are no deep and enduring ties, financial or emotional, that will be severed by a dissolution.
The plaintiff is currently unemployed. I find it curious that, after fifteen years of continuous employment with her father at his law firm, she loses her job in the middle of these divorce proceedings. In any event, no insurmountable barriers exist to her finding another job as a legal receptionist. I find her to have an earning capacity of $25,000 per year, based on her gross salary immediately prior to her unemployment and her interest income.
I find the defendant to have a gross annual income of $135,000, with a net annual income of $82,000. These sums are based upon the income figures for 1995 contained in the defendant's February 13, 1996 financial affidavit. The defendant's claim that he will earn less money in 1996 is not supported by reliable evidence.
I also find the fair market value of the defendant's partnership interest in his accounting firm to be $350,000. The plaintiff's expert witness Ken Pia, a certified business appraiser and a certified public accountant, testified that it is his opinion that the fair market value of the defendant's interest is $350,000. His opinion is based on the assumption that the defendant has a one-third equity interest in the partnership. The court finds this assumption to be reasonable and based on the evidence. The defendant contributed one-third of the capital to start the business and there is presently no countervailing CT Page 1598-M written or oral agreement as to the specific percentage of each partner's equity interest. The testimony offered by the defendant that his equity interest is less than one-third is self-serving and not credible.
As stated by Mr. Pia, a number of liabilities need to be deducted from the fair market value to determine the net value of the defendant's partnership interest. The figure should be reduced by the defendant's obligations to fund the retirement of Alan Bailey and the retirement of his former partners at Bailey, Moore, Schaefer and Proto. The court finds the present value of the defendant's share of these liabilities to be $294,000 and $45,000, respectively. Deducting these amounts results in a net value of $11,000.
Mr. Pia arrived at a final net value of $85,000 by adding to the $11,000 the funds set aside by the defendant to pay his obligation toward the retirement of his former partners. Mr. Pia believed the set aside figure to be $74,000. The court finds it to be $5,800. The $74,000 is an earlier amount, most of which has since been spent. As testified to by Andrew Errato, a partner of the defendant, the amount currently available in the Bailey, Bailey, and Errato bank account to pay the obligation is $5,800. Adding this sum to $11,000 results in a final net value for the defendant's partnership interest in his accounting firm of $16,800.
The defendant has deferred compensation plans which the court finds to have a present value of $171,000. He also had interests in various real estate, including his current home at 309 Thimble Islands Road in Branford. The only real estate interest shown at trial to have any current value is his equity in his Branford home which the court finds to be $45,000.
The plaintiff currently has equity of $98,000 in her home at 42 Indian Woods Road in Branford. She also has bank accounts and stocks with a present value of approximately $70,000.
During the course of the trial, the plaintiff filed a motion for contempt. The plaintiff asserted that the defendant was in contempt of the court's order of May 10, 1994 enjoining the distribution of all real and personal property "except for those assets transferred in the ordinary course of business." In her motion, the plaintiff specifically alleged that the defendant transferred $50,000 to a third party. At trial, the plaintiff CT Page 1598-N also claimed that the defendant disposed of insurance proceeds that he received from the loss of a boat and that he cashed in a certificate of deposit.
It is undisputed that the defendant took the actions complained of by the plaintiff. I do not find the use by the defendant of the $50,000 to be contemptuous. He testified that he asked for a partial repayment of his capital loan in order to satisfy an outstanding $100,000 liability. He stated that he believed his actions were justified because they ultimately improved his balance sheet.
I find that the defendant acted in good faith and that he was not attempting to deplete his assets so that they were unavailable to the plaintiff. "The fact that the order had not been complied with fully. . .does not dictate that a finding of contempt must enter. It is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order."Marcil v. Marcil, 4 Conn. App. 403, 404 (1985).
It is not appropriate for this court to consider the remaining bases proffered at trial by the plaintiff for holding the defendant in contempt. The actions by the defendant in using the insurance proceeds and cashing in a certificate of deposit were not part of the plaintiff's written motion for contempt. The defendant was not given proper notice that the plaintiff was claiming these actions were contemptuous. See Practice Book §§ 196 and 108. Cf. Winick v. Winick, 153 Conn. 294 (1965).
The plaintiff did, however, submit evidence, without objection by the defendant, that the defendant used the proceeds of a certificate of deposit. I find this action of the defendant to be in violation of the court's order enjoining the distribution of assets and determine that remedial orders are appropriate. See Nelson v. Nelson, 13 Conn. App. 355, 363 (1988).
In determining the orders contained herein, I have carefully considered all the statutory criteria contained in Conn. General Statutes § 46b-81 as it relates to the assignment of property and § 46b-82 as it relates to the award of alimony. The court is also guided by the rationale underlying the distribution of property in a dissolution action. "It is widely recognized that the primary aim of property distribution is to recognize that marriage is, among other things, a shared enterprise or joint CT Page 1598-O undertaking in the nature of a partnership to which both spouses contribute directly and indirectly, financially and nonfinancially, the fruits of which are distributable at divorce." Krafick v. Krafick, 234 Conn. 783, 795 (1995). The parties' marriage can not fairly be described as a shared enterprise or joint undertaking. Their financial and nonfinancial contributions to each other were minimal. As a result, little fruit can be attributed to the marriage.
The court enters the following orders
1. The marriage is ordered dissolved on the grounds of irretrievable breakdown.
2. The defendant shall pay the plaintiff lump sum alimony in the amount of $42,000, payable at the rate of $1,200 per month for the next 35 months.
3. The plaintiff shall retain ownership of her house at 42 Indian Woods Road, Branford. The plaintiff is ordered to take immediate steps to remove, if possible, the defendant from the existing mortgage on said house. The plaintiff shall assume responsibility for the mortgage and shall indemnify and hold the defendant harmless with respect thereto.
4. The defendant shall retain ownership of his house at 309 Thimble Islands Road, Branford.
5. The defendant shall pay $2,938 within two weeks to the plaintiff, which represents one-half of the existing certificate of deposit at Centerbank.
6. The defendant shall pay $3,235 within two weeks to the plaintiff, which represents one-half the proceeds of the certificate of deposit improperly cashed in by the defendant.
7. Each of the parties shall retain any pension, deferred compensation or other retirement account listed on their respective financial affidavits.
8. Each of the parties shall retain ownership over the bank accounts and stocks listed on their respective financial affidavits.
9. Each of the parties shall be solely responsible for CT Page 1598-P payment of the liabilities listed on their respective financial affidavits.
10. The defendant shall return to the plaintiff her oriental rug within one week of the dissolution of the marriage.
Jon M. Alander, Judge