[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR PENDENTE LITE RELEASE OFFUNDS
This memorandum of decision addresses the plaintiff's application for permission to use marital funds for the purchase of a new home. The court finds this issue in favor of the plaintiff.
This action for dissolution of marriage was brought before the court through the complaint bearing a return date of January 30, 1996. The defendant responded with an answer and cross complaint dated January 16, 1996. The parties have one minor child, Lindsey Brooke, born July 26, 1989. The parties and the minor child are each represented by counsel.
On January 23, 1996, the parties entered into a stipulation, CT Page 4255-TT which formed the basis of the court's relevant pendente lite orders as follows: "2.A. The Plaintiff shall have temporary exclusive possession of the marital home at 11 LANGLEY PARK, FARMINGTON, CONNECTICUT, in accordance with the further terms of this agreement. . . . D. The Plaintiff shall forthwith begin to seek to purchase or rent an appropriate home for herself and the minor child, LINDSEY PELTZER, and it is contemplated that this process of seeking a home will result in a contract to purchase or rent to be signed within six (6) weeks. The parties shall further discuss through counsel the mechanisms for financing, etc. The Plaintiff shall have exclusive use of 11 LANGLEY PARK until one (1) week after the date of closing of her new home, or ten (10) weeks from this date, whichever is sooner. E. Within six (6) weeks of the signing of this agreement, if the Plaintiff has been unable to locate a home which she wishes to purchase or rent, she will file a motion with this Court which will allow both the Plaintiff and the Defendant to argue, de novo, that the Plaintiff be allowed to maintain her residence at 11 LANGLEY PARK, FARMINGTON, CONNECTICUT, and the Defendant will have the right to argue that any restrictions concerning his access to 11 LANGLEY PARK be modified."
Thereafter, on April 3, 1996, the parties agreed to certain pendente lite orders, which were approved by this court on that same day.[1] Those relevant orders include the following provisions: "1. The Plaintiff shall remain in the marital home at 11 Langley Park, Farmington. She shall maintain such in a condition similar to that which was the case prior to the Defendant being excluded from such. She shall permit whatever contractors hired to maintain the property as is the custom and commit no waste upon the premises. . . . 4. Both Parties shall maintain the assets under their respective control without any expenditures out of the ordinary course of business, each shall provide a full accounting of monies spent. 5. That as of June 1, 1996 the Plaintiff shall move from the family home without any opportunity of (sic) circumstances for remaining thereafter. The Parties shall facilitate the purchase of a replacement home for the Plaintiff from marital funds. Between now and June 1, 1996 the Plaintiff shall utilize the funds under her control for living expenses, and down payment for her new home. . . . 11. The Parties shall cooperate in and the facilitation (sic) of the funding of Plaintiff's new home in a reasonable fashion from marital funds."
The file reflects that the parties appeared before Judge CT Page 4255-UU McWeeny on May 1, 1996. On that date, he approved a stipulation for joint custody of the minor child, "who shall reside primarily with the plaintiff Mother, without prejudice, pendente lite." Judge McWeeny also approved the parties' stipulation regarding the defendant's visitation with Lindsey, and entered other orders affecting the welfare of the child. Judge McWeeny continued the case until May 22nd: the file does not reflect the specific matters to be addressed on that date.
Under date of May 3, 1996, the plaintiff submitted four other motions in this case, including a "Motion to Extend." This motion asserted that the defendant had failed to cooperate with the plaintiff's efforts to "make ready her new home and has consciously thwarted her opportunity to move in a timely manner." The file does not reflect that a hearing has yet been held to address this motion.
 I
In family relations cases, an order rendered by the trial court in accordance with an agreement or stipulation is considered to be a contract binding the parties. Tremaine v.Tremaine, 235 Conn. 45, 57 (1996); Kronholm v. Kronholm, 16 Conn. App. 124,130 (1988); Caracansi v. Caracansi, 4 Conn. App. 645,650, cert. denied, 197 Conn. 805 (1985). As when construing contracts arising under other circumstances, when the court evaluates an agreement forming the basis of a contract in a family relations case, it must examine the entire document to determine whether its terms disclose "ambiguity or language reasonably subject to different interpretations." Kronholm v.Kronholm, supra, 16 Conn. App. 128, 130-31. Where the language of the contract is clear and explicit, the question for the court "is not what intention existed in the minds of the parties but what intention is expressed in the language used. . . When the intention conveyed is clear and unambiguous, there is no room for construction . . . ." (Citations omitted.) Kronholm v. Kronholm, supra, 16 Conn. App. 130-131. The court reviewing such an agreement must accord the language used "`its common, natural and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . .'" (Citations omitted.)Tremaine v. Tremaine, supra, 235 Conn. 57.
The court notes that where the text of an agreement "reasonably allows for varying interpretations — whether by the inadvertence or design of the draftsman — the need for judicial CT Page 4255-VV construction cannot, and may not, be avoided." (Citations omitted.) Nelson v. Nelson, 13 Conn. App. 355, 359-60 (1988). "While it is fundamental that the terms of a written contract which is intended by the parties to set forth their entire agreement may not be varied by parol evidence, it is equally fundamental that when the words used in the contract are uncertain or ambiguous, parol evidence of conversations between the parties or other circumstances antedating the contract may be used as an aid in the determination of the intent of the parties which was expressed by the written word." (Citations omitted.)Kronholm v. Kronholm, supra, 16 Conn. App. 131. Where two possible interpretations of a contractual provision may be made, "courts prefer the more equitable and rational interpretation." (Citations omitted.) Nelson v. Nelson, supra, 13 Conn. App. 362.
 II
On May 8, 1996, this court commenced a hearing to evaluate the parties' compliance with those provisions of the April 3rd agreement which related to the plaintiff's departure from the marital home, and her occupancy of her new home. Counsel for the plaintiff had requested the court to release and make available the use of marital funds sufficient to effectuate the plaintiff's purchase of her new home, in aid of the court's orders set forth in paragraphs 5 and 11 of the April 3rd agreement, by modifying paragraph 4 of that I agreement. Counsel for the plaintiff attended that hearing, as did the plaintiff. Counsel for the minor child was present. Counsel for the defendant attended, but the defendant was absent from the proceedings.
At this hearing, the court found that the language used in paragraphs 5 and 11 of the April 3rd agreement reasonably allowed for varying interpretations. See Nelson v. Nelson, supra,13 Conn. App. 360. Accordingly, the court ordered that the parties would be entitled to introduce parole evidence of their intentions with regard to the purchase and financing of the new home referenced in paragraphs 5 and 11 of the April 3rd agreement.
The plaintiff presented evidence in support of her claim that she should be entitled to the use of $750,000 of marital funds for purchase of her new home, plus $2,500 for closing costs. The plaintiff established that as of April 3, 1996, she had chosen to commence construction on a new home that would cost $650,000. This home was in the same general neighborhood and development as CT Page 4255-WW that of the marital home, where she had elected to relocate. The defendant had objected to that particular selection of a new home. He preferred that she purchase a home that was existing, or under construction, rather than to commence construction of a new home, which could delay the defendant's re-occupancy of the marital home. The plaintiff then located an existing home, partly constructed, and contracted for the purchase of that home at a cost of $750,000. The defendant was aware of the particular house the plaintiff had contracted to purchase, and had received a copy of the contract related to this purchase on or before April 17, 1996. The defendant objected to the purchase, based on the cost of the proposed new home.
The hearing of this matter reconvened on May 21, 1996. At that time, counsel for the minor child was absent from the proceedings, as was the defendant. The plaintiff, her counsel, and counsel for the defendant attended. The plaintiff's testimony established that she had accessed approximately $114,000 of marital funds, which funds she had used, or which remained under her control. The plaintiff established that she was a valid signator to the account from which these funds were obtained.[2]
Insufficient court time was available for completion of this hearing before June 1st, 1996, the date on which the plaintiff has been ordered to vacate the marital home. It is the court's intention that the hearing of this matter be continued, and be completed, with the production of such witnesses and evidence, including testimony if proffered from the defendant, as will be necessary to provide a complete basis for final orders concerning the plaintiff's purchase of a new home. However, the court has advised counsel that due to the need for orders to aid the parties in their compliance with the April 3rd agreement, and in the absence of any motion for modification of paragraphs 5 or 11 of that agreement, the court would issue interim, pendente lite orders, without prejudice to any party. The court further ordered that the hearing be continued to such a date as could be made available by the caseflow coordinator.
 III
The court makes the following findings based upon its consideration of the preliminary evidence presented and the orders entered on January 23, 1996, and using an equitable and rational interpretation of the language used in the April 3rd CT Page 4255-XX agreement. Nelson v. Nelson, supra, 13 Conn. App. 362.
The court finds that the parties intended the plaintiff to purchase a home in the same general neighborhood and development as that in which the marital home is located. The court further finds that the parties intended the plaintiff's new home to be available for occupancy no later than June 1, 1996. The court finds that the defendant had no objection, on financial grounds, to the plaintiff's proposed purchase of a home in this neighborhood costing $650,000, but that he did object on financial grounds to the plaintiff's purchase of a home at a cost of $750,000. The orders of the court, entered in accordance with the April 3rd agreement, indicate the parties' intention that marital funds would serve as a financial base for the plaintiff's purchase of her new home. The April 3rd agreement contains no limitation as to the nature of the plaintiff's new home, although the contemplated residence is described as a "replacement home."
The court finds that it is in the best interests of the parties' minor child to enable the plaintiff to quit the marital premises by June 1, 1996, pursuant to April 3rd agreement; to enable the plaintiff to occupy her new home on that date; to enable the defendant to re-occupy 11 Langley Park on that date; and to enable the minor child to have reasonable living quarters made available to her at the home occupied by each parent.
 IV ORDERS
The parties are to cooperate in making a maximum of $700,000 of marital funds available for the plaintiff's use in the purchase and financing of a new home. This cooperation will include, but is not limited to, immediate execution of documents or instruments designed to enable the plaintiff to access these funds. The plaintiff shall utilize the minimum amount of marital funds necessary for her to secure the purchase of her new home and/or to acquire the right to occupy her new home. The plaintiff may use these marital funds for reasonable attorney's fees or closing costs related to the purchase and/or financing of her new home. Immediately upon completion of purchase and/or financing transactions, the plaintiff shall furnish the defendant's counsel with copies of all documents relating to the purchase and/or financing of the plaintiff's new home. These documents shall include, but are not limited to, mortgage applications and CT Page 4255-YY affidavits, RESPA forms, fees for the services of closing counsel, and other closing documents.
The plaintiff shall not use these marital funds for any purpose other than as described herein. She shall not use these marital funds for furnishing, decorating, or embellishing her new home or the real property upon which the home is located. The purchase of any fixtures for the plaintiff's new home is allowed only insofar as such fixtures are requisite to the issuance of a certificate of occupancy by the municipality in which the new home is located.
The defendant shall have a lien on the full amount of marital funds utilized by the plaintiff in purchasing and financing her new home. This lien shall be recorded on the land records of the municipality in which the new home is located. Immediately upon completion of the purchase and financing of the plaintiff's new home, she shall execute a mortgage note for the full amount of marital funds utilized, in favor of the defendant. This mortgage note shall be directly delivered to counsel for the defendant, who shall hold this mortgage note in escrow pending further review of the court.
The plaintiff shall not dissipate any asset which she holds as the result of this transaction, including the homestead and real property she intends to purchase. She must maintain that homestead and real property in such a condition that will allow it to receive full market value if its sale is ordered. She cannot alienate, sell, gift, bequeath, otherwise transfer, or in any way encumber the new homestead and real property except to the extent that such is necessary for its initial purchase and financing.
These orders of the court are pendente lite in nature, and do not indicate a final distribution of property between the parties. These orders are entered without prejudice to any party, and are subject to review of the court at the appropriate time, following the plaintiff's purchase of her new home, and after June 1, 1996.
BY THE COURT
N. Rubinow, J. CT Page 4255-ZZ