[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR CONTEMPT
The defendant filed a motion for contempt on June 18, 2001 in which he claimed that the plaintiff wilfully failed to comply with two provisions of the dissolution judgment.
A hearing was held on this motion on November 21, 2001, January 2, 2002 and January 18, 2002. On January 28, 2002, the court agreed to reopen the proceedings for the limited purpose of receiving information into the record regarding a large bonus payment which the plaintiff had recently received from her employer. The court has carefully considered all of the evidence and testimony introduced at the hearing, as well as official documents in the court file. The court makes the following findings of fact based upon clear and convincing evidence introduced at the hearing.
 FACTUAL FINDINGS
The parties were married on July 29, 1989. On June 16, 1995, the court (Sullivan, J.) granted a dissolution of marriage and entered judgment in accordance with an agreement signed by the parties. The court awarded the parties joint legal custody of the two minor children. The children's primary residence was to be with the plaintiff subject to the defendant's reasonable rights of access. The judgment also provided that the defendant would pay the plaintiff weekly child support commencing on July 1, 1996. The actual amount of that weekly child support was to be determined on that date. The judgment additionally provided that the plaintiff would pay alimony to the defendant for a short period of time post judgment.
The court awarded the jointly owned family home at 91 Volpi Road in Bolton, Connecticut to the plaintiff. The defendant was ordered to quit claim his interest in said property to the plaintiff, and he has complied with that order. The plaintiff was ordered to pay the mortgage and other debts associated with the 91 Volpi Road property. The judgment required that the plaintiff would be responsible for the mortgage, taxes, insurance and all other expenses and financial obligations on, related to and resulting from the Volpi Road property, and that the plaintiff would indemnify and hold the defendant harmless with respect to those obligations. The judgment further required that the plaintiff was to ". . . take such action as is necessary, within five years hereafter, to eliminate [defendant's] financial responsibility for any notes or mortgages related to such property."
The dissolution judgment also required that the plaintiff pay and hold the defendant harmless from certain state and federal income tax obligations owed for the 1991 tax year.
In his contempt motion, the defendant claims that the plaintiff has CT Page 1970 wilfully and contemptuously violated the court's orders by failing to remove his name from the Volpi Road property mortgage within five years after the date of dissolution, and by failing to pay the debt owed to the U.S. Internal Revenue Service for the 1991 federal income taxes.
Credible evidence at hearing established that the plaintiff experienced significant fluctuations in the level of her income, and became encumbered with extensive liabilities for personal debt and income tax obligations, between the date of dissolution and the present time.
In early 1995, the plaintiff began employment as a pension administrator with a large corporation in New York City. Plaintiff's gross income for the 1995 tax year was $394,879.00. However, in September 1995 the plaintiff was involuntarily terminated from that employment. She received a severance payment, and was able to take advantage of stock options from her former employer that enabled her to maintain her 1995 level of income through 1996. The plaintiff's tax return for 1996 indicates that she received gross income that year in the amount of $370,338.00.
At the time of dissolution the defendant was attending college and working part-time. The financial affidavit which he submitted to the court on the date of dissolution indicated that his net weekly income was then $144.07.
The plaintiff was unemployed from September 1995 until May 1997. She testified credibly at the hearing that she made numerous efforts during that time to obtain employment, and believed that she had been blacklisted in the pension industry. A financial affidavit which she filed with the court in May 1997 indicated that she was receiving no income at that time.
The plaintiff testified credibly that she spent large sums from the money which she received from her severance payment and stock options on expenditures related to an unsuccessful attempt to start her own business venture.
In addition, she purchased a new motor vehicle and used about $20,000.00 to make improvements to the home in Bolton.
In May 1997, the plaintiff obtained work as an independent contractor for the City Treasurer's Office in Hartford. Her gross income for 1997 was $112,709.00. The plaintiff's gross income for the following three years was as follows: $141,265.00 in 1998; $147,645.00 in 1999; and $174,833.00 in 2000 (See defendant's Exhibits F, G and H). CT Page 1971
In July 1999, the plaintiff began her current employment as an executive with a life insurance company based in New York City. Her gross income for the 2001 tax year was approximately $240,000.00. In addition, in January of 2002, the plaintiff received a bonus from her employer in the gross amount of $88,000.00. After payment of taxes, she received the net sum of approximately $52,000.00 from that bonus payment.
On May 15, 1997, the parties agreed in court to modify alimony and child support. At that time the defendant was ordered to pay child support to the plaintiff (after offset credits) in the amount of $120.00 per week. In April 2001, at a proceeding before a family support magistrate of this court, the defendant was found to owe an arrearage in excess of $26,000.00 to the plaintiff for back child support payments.
The plaintiff is currently indebted to the United States Internal Revenue Service for back taxes in the amount of $99,300.00. of that sum, approximately $27,000.00 — $19,000.00 for taxes and the remainder for penalties and interest is owed on the parties' joint tax obligation for 1991. The remaining balance is owed for federal income tax obligations incurred by the plaintiff in subsequent years.
In the fall of 2001, the Internal Revenue Service placed a lien on the Volpi Road property in the amount of $19,834.29 to secure the debt which is owed by the parties for the 1991 income tax liability.
The plaintiff's January 17, 2002 financial affidavit indicates that she currently makes payments of $415.00 per week to the IRS toward the total amount which she owes for all past due federal income taxes.
The plaintiff explained at hearing that she failed to completely discharge the 1991 tax debt because she was under pressure from the IRS for a time to pay sums owed for past due 1995 taxes. The plaintiff claimed that she was fearful that the IRS would take her house if she did not satisfy this obligation. The court credits that testimony.
The plaintiff received a tax refund of $8,454.00 in 2000 for sums which she overpaid on her 1999 tax obligation. Most of that amount was applied to her 1995 tax debt.[1]
To date, the plaintiff has paid approximately $6,000.00 toward the 1991 federal income tax obligation.
Because the 1991 tax debt has not been retired by the plaintiff, the defendant, as a joint obligor, is still being held liable for that debt by the Internal Revenue Service. Credible evidence at hearing established that the IRS garnished $500.00 from the defendant's savings account, and CT Page 1972 intercepted the defendant's $300.00 tax refund, and applied those monies to the 1991 tax debt. As a result, the defendant has incurred a loss of $800.00 as a result of the plaintiff's failure to hold him harmless on the 1991 federal tax obligation.
The 1995 judgment also required the plaintiff to "take such action as is necessary" to eliminate the defendant's financial responsibility for the mortgage on the Volpi Road property. The plaintiff was also mandated by the judgment to hold the defendant harmless from that debt.
To date, the plaintiff has not refinanced the Volpi Road property, nor removed the defendant's name from the existing mortgage and note. As a result, the defendant is still jointly obligated to pay the mortgage encumbering the Bolton property. The defendant testified that he has been damaged as a result of the plaintiff's failure to hold him harmless on that debt. He claimed that prospective lenders will not allow him to finance the purchase of a new home because he is still legally obligated to pay the mortgage on the Volpi Road property. The court credits that testimony and accepts it as fact.
The plaintiff has made attempts since the date of dissolution to refinance the mortgage on her home with Fleet Bank, the American Eagle Credit Union, the Bank of Worms, and AmeriQuest. Per the plaintiff's most recent financial affidavit, the home in Bolton has a current fair market value of $280,000.00. The outstanding principal balance owed on the mortgage is $196,000.00. The property is also encumbered by the IRS tax lien of $19,834.00 and a mortgage held by her attorney for past legal services.
All of the plaintiff's requests to refinance the Volpi Road property have been denied. The plaintiff claims that these refusals resulted from her credit history and income level. The court accepted as credible the plaintiff's testimony that she has missed mortgage payments and incurred other financial debts since the date of dissolution. The court accepts the plaintiff's representations that past financial problems have interfered with her ability to refinance the current mortgage on the Volpi property.
The plaintiff believes that she will be able to refinance the home in seven or eight months if she continues to make regular mortgage payments and maintains her current level of income. The court also found this testimony by the plaintiff to be credible.
 DISCUSSION
In order to constitute contempt, a party's conduct must be wilful. CT Page 1973Eldridge v. Eldridge, 244 Conn. 523, 529, 710 A.2d 757 (1998), citingConnolly v. Connolly, 191 Conn. 468, 483, 464 A.2d 837 (1983). It is within the sound discretion of the court to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order. Eldridge, supra, citing Marcil v. Marcil,4 Conn. App. 403, 405, 494 A.2d 620 (1985). A finding of contempt depends upon the facts and circumstances surrounding it. Dukes v. Durante,192 Conn. 207, 228, 471 A.2d 1368 (1984). The fact that an order is not complied with fully does not dictate that a finding of contempt must enter. Marcil, supra, p. 405.
Although the plaintiff has not complied with the court's order that she remove the defendant from the Volpi Road mortgage, the court does not find as proven by clear and convincing evidence that her failure to do so was in wilful and contemptuous violation of the court's order. Admittedly, the plaintiff has earned significant income during the years following the dissolution. However, she has also experienced a relatively lengthy period of unemployment, and incurred large additional individual income tax debts since the date of dissolution. The plaintiff testified credibly that as a result of these postjudgment financial problems, she feared bankruptcy and the seizure of her home by tax authorities. The court also finds that a significant portion of the plaintiff's severance settlement and stock option profits were used in an unsuccessful effort to start her own business venture. Finally, the court finds that the defendant made valid attempts to refinance the Bolton property, and that these efforts were thwarted due to her credit history and other financial difficulties.
Based on the foregoing, the court does not find that the plaintiff wilfully failed to remove the defendant from the mortgage, or hold him harmless therefrom. The defendant's motion for contempt based on that claim is therefore DENIED.
The court also finds that the defendant has not proven by clear and convincing evidence that the plaintiff wilfully defied the court's order that she discharge the 1991 federal tax debt. The court finds that the plaintiff has paid some of that obligation and continues to make installment payments toward that debt. The court also finds, for the reasons discussed above, that the plaintiff's subsequent tax problems and financial difficulties interfered with her capacity to satisfy this court-ordered obligation.
The court also notes that the 1991 tax debt of approximately $26,000.00 is roughly equivalent to the amount of the arrearage owed by the defendant to the plaintiff for past due child support. CT Page 1974
Based upon all of the foregoing, the court finds that the defendant has not proven wilful and contemptuous defiance of the court's order concerning the payment of taxes. His motion for contempt based on that claim is also DENIED.
 ORDERS
In a proceeding such as this, even in the absence of a finding of contempt, the court has broad discretion to make whole any party who has suffered as a result of another party's failure to comply with a court order. Nelson v. Nelson, 13 Conn. App. 355, 367, 536 A.2d 985, 991
(1988). Where a court's order is supported by undisputed evidence of the offending party's failure to comply with provisions of a judgment, it is not an abuse of discretion to order relief. Clement v. Clement,34 Conn. App. 641, 647-648, 643 A.2d 874, 880 (1994).
Although the court has not found contempt here, it does find that the plaintiff has failed to satisfy the court orders with respect to the refinance of the Bolton property and the payment of the 1991 tax obligation.
The plaintiff has recently received a bonus from her employer, which after taxes totals $52,000.00. The court finds that she is now in a position to completely discharge the 1991 tax debt, and comply with the following orders:
The court orders that the plaintiff pay the entire balance which is outstanding on the 1991 federal income tax debt within sixty (60) days of the date of this order. The plaintiff has claimed in a post-trial request for relief that it would be inequitable to require her to pay that sum prior to November, 2002 because of the child support arrearage owed to her by the defendant. The court does not agree. By retiring the 1991 tax debt, the plaintiff will improve her standing with the Internal Revenue Service, earn a discharge of the tax lien which currently encumbers the Volpi Road property, improve her personal credit history, and hopefully prevent the defendant's future tax refunds from being intercepted by the IRS. For all of the foregoing reasons, the court orders that the plaintiff discharge the outstanding 1991 tax obligation, in its entirety, within the time period referred to above.
The court also orders that the plaintiff shall pay to the defendant, within sixty (60) days of the date of this order, the sum of $800.00. This sum will reimburse the defendant for the tax refund and the bank account sum which the Internal Revenue Service previously confiscated and applied to the 1991 tax bill. CT Page 1975
The court has accepted as credible the plaintiff's estimate that she will be financially able to refinance the Volpi Road property, and remove the defendant from the existing mortgage obligation, by November 1, 2002. The court finds the plaintiff's request for extension of time to refinance, and the reasons therefore, to be credible and reasonable. The court orders that the plaintiff is to completely remove the defendant from any financial obligation on the Volpi Road property by November 1, 2002. In the interim, the court also orders that the plaintiff is to pay and hold the defendant completely harmless from any and all financial obligations on the property in accordance with the prior orders of the court.
If the defendant has not been removed from all financial obligations on the Volpi Road property (including but not limited to the existing mortgage) by November 1, 2002, the court orders that the property at 91 Volpi Road in Bolton shall be placed on the market on November 2, 2002, and expeditiously sold at its then fair market value. The marketing and sale of said Volpi Road property shall be effectuated according to terms and conditions which will be established by this court, if necessary, at a future hearing.
The court orders that it shall retain ongoing jurisdiction over this matter for the purpose of monitoring and effectuating compliance with the foregoing orders.
If the defendant has not been completely removed from all financial liability for the Volpi Road property by November 1, 2002, he may seek further orders from this court pertaining to the marketing and sale of said property by filing an appropriate motion with the court.
Having considered all of the evidence and equities in this matter, the court further orders that the plaintiff pay the sum of $2,000.00 to the defendant, as a contribution toward his counsel fees, within sixty (60) days of the date hereof.
BY THE COURT
DYER, J.