BARBARA PLACE ET AL. *v.* CITY OF WATERBURY
(AC 20937)

Dranginis, Flynn and Peters, Js.

Argued May 7—officially released October 16, 2001

*James P. Brennan*, for the appellants (plaintiffs).

*Charles E. Oman III*, for the appellee (defendant).

*Opinion*

PETERS, J. This civil appeal concerns the relationship between staff members of a federally funded regional agency and the city, within the agency's service area, that administers the agency's grant money. At issue is whether the city must make fiscal contributions to a deferred compensation plan that agency staff members chose to fund their pensions. That question, in turn, depends upon whether the staff members were city employees for pension purposes.[1] In a careful and comprehensive memorandum of decision, the trial

---

[1] There is no basis in the record for the plaintiffs' assertion in their appellate brief that they had a cause of action against the city for breach of duty even if they were not city employees. Their complaint is to the contrary. Each count in the complaint specifies or incorporates by reference the allegation that the plaintiffs were city employees. The court construed the plaintiffs' complaint accordingly. Even their own appellate reply brief states that "the plaintiffs claim . . . that their status as employees of the city is essential . . . ."

court found that they were not and, accordingly, rendered judgment for the city. We agree.

The plaintiffs, Barbara Place, Ivory Anders, Patty Blue-Murphy and Kathy Maness are, or were previously, staff members of the Waterbury Area Job Training Administration (agency). They brought an action against the defendant, the city of Waterbury (city), to recover damages for the city's failure to contribute to their deferred compensation plan. Each count of their five count complaint[2] was premised on their allegation that they were city employees.[3]

The city denied being the plaintiffs' employer. After an evidentiary hearing, the court made a factual finding, undergirded by many subsidiary findings, that the plaintiffs were not city employees with respect to the pension contribution claim at issue in this case. It therefore rendered judgment in favor of the city.

On appeal from that adverse judgment, the plaintiffs challenge the validity of the court's fact-finding with respect to their relationship to the city.[4] Their appeal

---

[2] In five counts, the plaintiffs' complaint alleged that, from 1987 to 1991, the city (1) owed them an accounting and payments of all sums the city allegedly had failed to make to the deferred compensation plan, (2) had acted in breach of its fiduciary duty, (3) had acted in breach of contract, (4) had been unjustly enriched at the expense of the plaintiffs, and (5) had acted in violation of the duty of good faith and fair dealing. The plaintiffs do not challenge the trial court's decision on count one.

[3] In addition, the defendants filed five special defenses, including a claim of waiver and a claim that the plaintiffs' complaint was time barred. The court agreed that one of the counts of the complaint was indeed time barred. On appeal, this ruling has not been challenged.

[4] In the plaintiffs' brief on appeal, they discussed nothing other than their claim that the court improperly had found that they were not city employees. After the city pointed out, in its appellate brief, that any other issues should be deemed abandoned, the plaintiffs attempted to resurrect other issues in their reply brief. This attempt is procedurally improper and substantively unavailing. Procedurally, it is improper to raise issues in a reply brief that were not raised in the principal brief. *Ramos* v. *Vernon*, 254 Conn. 799, 843–44, 761 A.2d 705 (2000); *State* v. *Garvin*, 242 Conn. 296, 312, 699 A.2d 921 (1997). Substantively, the underlying factual predicate for each of the

can succeed only if the court's finding was clearly erroneous. "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. In applying the clearly erroneous standard to the findings of a trial court, we keep constantly in mind that our function is not to decide factual issues de novo. Our authority, when reviewing the findings of a judge, is circumscribed by the deference we must give to decisions of the trier of fact, who is usually in a superior position to appraise and weigh the evidence." (Internal quotation marks omitted.) *Doyle* v. *Kulesza*, 197 Conn. 101, 105, 495 A.2d 1074 (1985); see also Practice Book § 60-5; *Morgan Buildings & Spas, Inc.* v. *Dean's Stoves & Spas, Inc.*, 58 Conn. App. 560, 564, 753 A.2d 957 (2000); *Nelson* v. *Nelson*, 13 Conn. App. 355, 359, 536 A.2d 985 (1988).

The court based its finding that the plaintiffs were not city employees on a number of subsidiary factual determinations. These subsidiary findings fall into three categories: (1) the origin and status of the agency; (2) the circumstances under which the plaintiffs elected to fund their pensions through a deferred compensation plan; and (3) the circumstances surrounding the discontinuance of employer contributions to the plaintiffs' deferred compensation plan.

The court made numerous findings with respect to the origin and the nature of the agency at which the plaintiffs performed their duties.[5] Pursuant to 29 U.S.C.

additional claims was that the plaintiffs were city employees. Our conclusion to the contrary obviates the need for further elaboration.

[5] Although the plaintiffs had alleged, in the fourth count of their complaint grounded on a claim of unjust enrichment, that they had performed services for the city, the court made no such finding. On appeal, the plaintiffs concede that any such claim is sustainable only if they were in fact employees of the city.

§§ 1512 and 1513, the agency was funded by federal grants to carry out its mission of assisting access to employment. The agency was directed to provide such services not only for the city, but also for the neighboring towns of Naugatuck, Prospect, Cheshire, Beacon Falls, Thomaston, Middlebury, Southbury, Woodbury, Oxford, Watertown and Wolcott. The agency was, therefore, not a city agency, but a separate regional entity. Although the city issued payroll checks and kept employment records for the plaintiffs, those services arose out of the fact that the regional council had designated the city, as a member of the regional agency, to act as administrator of the agency's assets. See 29 U.S.C. § 1513 (b) (1) (B).

The court also made findings about the circumstances under which the plaintiffs opted for enrollment in a deferred compensation plan. Prior to 1984, the plaintiffs had been enrolled in the city's municipal retirement plan. In June, 1984, the executive director of the agency advised all staff members, including the plaintiffs, that they could pursue one of three options as a retirement plan. They could remain in the city pension plan, obtain coverage under social security or join a deferred compensation plan offered by the Aetna Life Insurance and Annuity Company (Aetna). The executive director told the staff that, if the plaintiffs elected the deferred compensation plan, that plan would be funded by their individual contributions and by contributions from "the employer." The director's statement did not indicate whether it was the city or some other entity that would make the contemplated employer contributions. On the ballots used by the plaintiffs to select their preferred retirement plan, the plaintiffs were described as agency employees.[6] No part of the Aetna documentation described the city as the employer. No

---

[6] These ballots expressly described each plaintiff "AS A WAJTA ADMINISTRATION EMPLOYEE . . . ."

evidence was presented that the city had played any consultative role in the plaintiffs' retirement planning.[7]

Once the Aetna plan was put into place, the city's role was confined to that of an administrator. The city prepared the checks to be drawn from the agency budget in reliance on calculations derived from agency vouchers. The agency itself periodically informed Aetna of employer contributions to the deferred compensation plan and, in so doing, referred to the agency as the payor. The agency's director was the person who informed the plaintiffs of the balances in their individual Aetna accounts. These reports uniformly described the agency, rather than the city, as the plaintiffs' employer.

In January, 1988, employer contributions to the plaintiffs' Aetna plan were formally discontinued. The court found that the plaintiffs were informed about this unfortunate development by an agency memorandum issued by a successor agency director. The memorandum stated that "agency matching funds" were no longer available because "we" were encountering budgetary constraints. There was no allusion to the city as the party responsible for the discontinuance. The plaintiffs contacted neither the city's personnel and benefits office, nor any other city employee, to inquire why matching funds no longer were being paid. In July, 1991, each of the plaintiffs left the Aetna plan and enrolled instead in the social security retirement plan.[8]

Read in their entirety, these subsidiary findings of fact provide a sound foundation for the court's finding that the plaintiffs were not city employees for pension purposes. The plaintiffs do not attack these findings directly. They do not challenge the credibility of any

---

[7] It is not disputed that the city reimbursed the plaintiffs for the respective amounts that had accrued while they were members of the city pension plan.

[8] The plaintiffs' claims for relief, therefore, relate only to the period from August, 1987, to July, 1991.

witness and cannot avoid the probative force of documentary evidence to which they raised no objection at trial. What the plaintiffs do claim is that the court's findings are significantly undermined by the court's failure to take into account a number of other facts that support their complaint.

Our analysis of the plaintiffs' claims is constrained by the procedural posture in which this appeal comes to us. Because the issues before us arise directly from the allegations contained in the plaintiffs' complaint, it is the plaintiffs upon whom the burden of proof rested. The city's denial of the allegation that the plaintiffs were city employees does not shift that burden to the city. If the court's finding was in any respect incomplete, the plaintiffs had the opportunity to fill the gaps by filing a motion for articulation or for a rehearing. Practice Book § 66-5. The plaintiffs did not pursue either alternative.

Before we address the merits of the plaintiffs' claims of error by omission, we must place them in context. The plaintiffs did not ask the trial court to determine whether they were city employees for any and all purposes. As the case was tried, the plaintiffs charged the city with only one dereliction, its failure to make contributions to their self-selected pension plan. The issue before us devolves, therefore, into the question of whether the plaintiffs were city employees with respect to their pension plan. We agree with the court's resolution of this issue.

The plaintiffs' alleged errors of omission focus on four claims. They claim that they were city employees between 1984 and 1991 because (1) no other entity has been identified as their employer, (2) the city provided them with health insurance and life insurance,[9] (3) the

_____

[9] The plaintiffs also note the fact that they are currently enrolled in social security as employees of the city. That may well be true, but it is irrelevant. This case concerns events that predate the plaintiffs' participation in social security.

city was listed as their employer on their W-2 forms and (4) federal funding was not inconsistent with city employment.

The plaintiffs' first claim is that they were city employees because no one else was found to be their employer. It is difficult to square this argument with the procedural reality that the plaintiffs had the burden of proving their status. Even if we were to accept the logic of the plaintiffs' argument, arguendo, this claim would not be sustainable because it misreads the record. The court expressly found that, under federal law, the plaintiffs were employees of the agency, which, in turn, was a separate regional entity accountable to the regional council that oversaw their performance. No other finding was required on this issue.

The plaintiffs' second claim is that they were city employees because the city provided them with health insurance and life insurance. To prevail on this argument, the plaintiffs had to show a linkage between health and life insurance benefits on the one hand and pension benefits on the other. The plaintiffs testified that they believed that there was such a linkage. No one questions the sincerity of their belief. Nonetheless, the court properly could find that the plaintiffs' belief did not outweigh the probative force of the documentary record.

In its evaluation of the record as a whole, the court noted that, pursuant to General Statutes § 7-425 (5),[10] the city had no legal obligation to provide pension plans

---

[10] General Statutes § 7-425 (5) provides in relevant part: " 'Member' means any regular employee or elective officer receiving pay from a participating municipality . . . but shall not include . . . any person holding a position funded in whole or in part by the federal government as part of any public service employment program, on-the-job training program or work experience program, provided persons holding such federally funded positions on July 1, 1978, shall not be excluded from membership but may elect to receive a refund of their accumulated contributions without interest . . . ."

for regional workforce development agencies that were funded federally. The city manifested its intention to exclude agency employees from the city pension plan by a letter to the agency executive director, which stated the city's position that agency employees were not city employees.[11] At trial, the executive director did not deny that he had received the letter and acknowledged that, in ordinary course, the contents of the letter would have been made known to all agency employees.[12] This record demonstrates the absence of the linkage on which the plaintiffs rely.

The plaintiffs' third claim is that the city must be deemed to be the plaintiffs' employer because the city was so designated in the W-2 forms that they received annually. The plaintiffs emphasize that federal law requires an *employer* to issue W-2 forms to its *employees*. According to the plaintiffs, had the city deliberately misstated its relationship to the plaintiffs, the city would have violated federal law. This claim ignores the court's finding that "[t]he fact that the city issued payroll checks and kept employment records is consistent with the city having been designated as a member of the regional agency that would administer the assets of [the agency] pursuant to 29 U.S.C. § 1513 (b) (1) (B)." That finding is equally applicable to W-2 forms.

The plaintiffs' final claim is that the court's finding was inconsistent with the testimony of the city's pen-

[11] This letter was sent during the time when the plaintiffs were reviewing their retirement plan options. The letter was premised on city counsel's understanding that the plaintiffs, who had previously participated in the city pension plan, had expressed no interest in remaining in that plan. Presumably, these staff members would have been grandfathered in had they chosen to remain in the city pension plan. See General Statutes § 7-425 (5). It is unclear why the executive director informed *all* staff members that participation in the city's pension plan was one of the retirement plan options. For present purposes, we need not resolve this ambiguity.

[12] The city's board of aldermen subsequently voted to exclude from the city's pension plan any person whose salary was funded by federal grants.

sion and benefits administrator. The administrator testified that the plaintiffs receive health insurance because they came within the group that the city calls "the city of Waterbury all employees." She further testified that city employees retained that status even though they were funded "through federal grants." Curiously, she was never asked whether the city's responsibility for employee benefits included pension benefits for employees funded through federal grants. Her testimony, therefore, did not discredit the letter sent by the city's counsel, at a time preceding her own city employment, that expressly notified the agency that the city would not provide such pension benefits. In light of the city's unchallenged authority to unbundle its benefits package, the plaintiffs' reliance on this testimony is misplaced.

In sum, we disagree with the plaintiffs' claim that the force of the court's finding about their employee status was diminished by the evidence presented on their own behalf. Although we sympathize with the plaintiffs' plight, we are bound by the evidentiary record. That record provides ample support for the court's finding that the plaintiffs were not city employees with respect to the funding of their pension plan. The plaintiffs have not demonstrated that the court's finding was clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.