# VINCENT J. DOUTHWRIGHT ET AL. *v.* NORTHEAST CORRIDOR FOUNDATIONS ET AL.
## (AC 21988)

Mihalakos, Flynn and Peters, Js.

Argued May 3—officially released September 17, 2002

*Janet M. Helmke*, with whom, on the brief, was *Joshua L. Milrad*, for the appellants (named defendant et al.).

*Matthew Shafner*, with whom, on the brief, was *Amy M. Stone*, for the appellees (plaintiffs).

*Opinion*

PETERS, J. This case concerns the applicability of the doctrine of accord and satisfaction, a common-law doctrine that, for negotiable instruments such as checks, has now been codified[1] in article three of the Uniform Commercial Code, General Statutes § 42a-3-311.[2] Invoking this doctrine, a debtor maintains that its belated payment of the principal amount of a debt discharged it of any obligation to pay interest on the debt because its payment check was accompanied by a letter stating that the check was tendered as an accord and satisfaction.

A precondition of an enforceable accord and satisfaction is that the tender of payment occur in the context of a good faith dispute about the amount of an unpaid debt. This was the rule at common law and, for checks, it is now the rule of § 42a-3-311 (a). See *Herbert S. Newman & Partners, P.C.* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 764–65, 674 A.2d 1313 (1996); see also *County Fire Door Corp.* v. *C. F. Wood-*

---

[1] Although there are differences between the statute and the common law, those differences are not relevant under the circumstances of this case.

[2] General Statutes § 42a-3-311 provides in relevant part: "Accord and satisfaction by use of instrument. (a) If a person against whom a claim is asserted proves that (i) that person in good faith tendered an instrument to the claimant as full satisfaction of the claim, (ii) the amount of the claim was unliquidated or subject to a bona fide dispute, and (iii) the claimant obtained payment of the instrument, the following subsections apply.

"(b) Unless subsection (c) applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim. . . .

"(d) A claim is discharged if the person against whom the claim is asserted proves that within a reasonable time before collection of the instrument was initiated, the claimant, or an agent of the claimant having direct responsibility with respect to the disputed obligation, knew that the instrument was tendered in full satisfaction of the claim."

*ing Co.*, 202 Conn. 277, 282 n.3, 520 A.2d 1028 (1987); *Munroe* v. *Emhart Corp.*, 46 Conn. App. 37, 42–43, 699 A.2d 213, cert. denied, 243 Conn. 926, 701 A.2d 658 (1997). The trial court found that the debtor did not prove that it had satisfied this precondition because, at the time when the check was sent, the amount of the debt, both as to principal and as to interest, was liquidated and therefore not subject to a good faith dispute.

In its appeal, the debtor contests the validity of the court's refusal to apply the doctrine of accord and satisfaction. We, however, are persuaded that the court's decision is amply supported by the facts of record at trial. Accordingly, we affirm the judgment of the court ordering the payment of interest for the time between the accrual of the debt and the acceptance of the check.

On February 13, 2001, the plaintiff Vincent J. Douthwright[3] filed a motion pursuant to General Statutes § 52-195c[4] for a default judgment arising out of the failure

[3] The plaintiff's wife, Sandra Douthwright, also was named as a plaintiff. She claimed a right to recover for loss of consortium resulting from her husband's injuries. For present purposes, her right to recover depends upon the viability of her husband's cause of action. For the sake of convenience, we will refer to Vincent Douthwright as the plaintiff.

[4] General Statutes § 52-195c provides in relevant part: "Time period for payment of settlement amount. (a) When an action to recover damages has been settled, any settling defendant shall tender all sums due from such settling defendant to any settling plaintiff or such plaintiff's agent not later than thirty days after receipt by the person or office designated in writing to the settling plaintiff or such plaintiff's agent by the settling defendant at the time of settlement of a duly executed release and a withdrawal discontinuing any court action, if any such action is pending, that are tendered by such settling plaintiff or plaintiff's agent and are executed by or on behalf of the settling plaintiff. . . .

"(c) In the event that a settling defendant or insurer fails to promptly tender all sums as required by subsection (a) of this section, a default judgment shall be entered by the court on behalf of any unpaid plaintiff against such defendant twenty days after such plaintiff files a motion for a default judgment with the court and serves such motion upon the representative of the insurer with whom the settlement was reached or the defendant with whom the settlement was reached. Such motion shall be accompanied

of the named defendant et al.[5] to pay their full share of an oral settlement agreement. The agreement entitled the plaintiff to recover $3.2 million as settlement of his tort action to recover damages for serious injuries that he received when concrete pylons rolled off a truck and crushed his leg. Pursuant to the agreement, the defendants were obligated to pay $2.5 million of that sum. Although the defendants' primary insurer had paid $1 million, the defendants' excess insurance carrier had refused to pay the remaining $1.5 million.

The plaintiff sought a default judgment in the amount of $1.5 million plus interest. In response, on March 13, 2001, the defendants denied that the settlement agreement imposed upon them an obligation to pay the plaintiff immediately.

On March 26, 2001, the parties appeared before the court for an initial hearing on the motion for default.[6] Subsequent to that hearing, the defendants sent the plaintiff a check in the amount of $1.5 million, accompanied by a cover letter. The amount of the check repre-

by an affidavit executed by the plaintiff or the plaintiff's attorney setting forth the terms of such settlement with supporting documentation attached.

"(d) Any insurer or defendant with whom the settlement was reached that fails to tender settlement proceeds within the time limit set forth in this section shall be liable for interest at a rate of twelve per cent a year on the amount of such settlement proceeds computed from the date such time limit expired."

[5] Northeast Corridor Foundations is a consortium that includes other defendants named in this action, Balfour Beatty Construction, Inc., Mass Electric Construction Co., Inc., and J.F. White Construction Co., Inc. David Gilman is an additional defendant who is not part of the consortium, but who was an employee of J.F. White Construction Co., Inc. We refer in this opinion to the Northeast Corridor Foundations consortium and Gilman as the defendants. The codefendant New England Pipe Corporation is not involved in the plaintiffs' motion for default or the court's order to pay interest. We refer to New England Pipe Corporation by name.

[6] At that time, the defendants indicated that they would issue a check to the plaintiff for $1.5 million. The plaintiff reasserted his right to interest on the delayed payment.

sented the principal sum then due. It did not include any payment of interest.

On May 8, 2001, after an evidentiary hearing, the trial court rendered judgment in favor of the plaintiff in the amount of $40,931.45. That amount represented interest at the rate of 12 percent per year as specified in § 52-195c (d)[7] for the period between February 2, 2001, when the defendants' payment became due, and April 25, 2001, when the defendants paid $1.5 million.

As the basis for its judgment, the court made two central findings of fact. One concerned the terms of the settlement agreement and the other concerned the date when the defendants' obligation to pay became due. The defendants' appeal challenges the propriety of these findings as they relate to their claim of accord and satisfaction.

Our review of the defendants' appeal is governed by the well established principle that an appellate court will overturn the factual findings of a trial court only if these findings are clearly erroneous. *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221, 435 A.2d 24 (1980). "A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. In applying the clearly erroneous standard to the findings of a trial court, we keep constantly in mind that our function is not to decide factual issues de novo. Our authority, when reviewing the findings of a judge, is circumscribed by the deference we must give to decisions of the trier of fact, who is usually in a superior position to appraise and weigh the evidence." (Internal quotation marks omitted.) *Doyle* v. *Kulesza*, 197 Conn. 101, 105, 495 A.2d 1074 (1985); see also Practice Book § 60-5; *Place* v. *Waterbury*, 66 Conn. App. 219, 222, 783

---

[7] See footnote 4.

A.2d 1260 (2001); *Nelson* v. *Nelson*, 13 Conn. App. 355, 359, 536 A.2d 985 (1988).

To support their claim of accord and satisfaction, the defendants maintain that the trial court improperly determined the terms of an oral settlement agreement to which the parties had agreed on December 15, 2000. The court found that the agreement unconditionally entitled the plaintiff to receive $3.2 million in full settlement of his claims against the defendants and New England Pipe Corporation. On an interim basis, the agreement allocated $2.5 million of this payment to the defendants. Further, the agreement provided that the ultimate allocation of payments between the defendants and New England Pipe Corporation would be decided by a subsequent arbitration. The court's final and most significant finding was that the settlement agreement entitled the plaintiff to immediate payment and that this payment was *not* conditioned on the execution of the contemplated arbitration agreement. The defendants disagree with the finding that the plaintiff should have been paid immediately.

The court based its finding on the testimony of all the participants in the settlement proceedings. The defendants' counsel testified that, at the time of the settlement negotiations, he had made it clear that the settlement was contingent upon the execution of the contemplated arbitration agreement between the defendants and New England Pipe Corporation. This testimony was flatly contradicted by the testimony of the other four attorneys who participated in the mediation that led to the settlement agreement. One of these attorneys was the mediator. The court expressly found that, even though the defendants' counsel believed his testimony to be accurate, the testimony was not credible.

"It is within the province of the trial court, as the fact finder, to weigh the evidence presented and deter-

mine the credibility and effect to be given the evidence. . . . Where testimony is conflicting the trier may choose to believe one version over the other . . . as the probative force of the evidence is for the trier to determine." (Citation omitted; internal quotation marks omitted.) *Briggs* v. *McWeeny*, 260 Conn. 296, 327, 796 A.2d 516 (2002), citing *State* v. *Santiago*, 245 Conn. 301, 318, 715 A.2d 1 (1998). We, therefore, defer to the trial court's credibility assessments and conclude that there was ample evidence in the record to support its findings about the terms of the settlement agreement.

Having determined that the settlement agreement entitled the plaintiff to immediate payment, the trial court found that the defendants' debt matured upon the plaintiff's delivery of the appropriate releases and the withdrawal of his complaint. See General Statutes § 52-195c (a). The plaintiff fulfilled his responsibilities on January 2, 2001. Accordingly, the defendants' debt became due and payable on February 2, 2001. The defendants' only challenge to this finding is their aforementioned contention that the settlement agreement was not unconditional. That claim we have already rejected.

The court's finding that the plaintiff was unconditionally entitled to payment on February 2, 2001, knocked out the underpinnings of the defendants' claim that their obligation to pay interest was discharged by their tender and payment of a check in the principal amount of their indebtedness.[8] In order to obtain such a dis-

[8] The check was accompanied by a letter, dated April 24, 2001, stating: "As you know, it is our position that any settlement of the above-referenced matter [*Douthwright* v. *Northeast Corridor Foundations*, Docket No. X04-CV-98-0119322S] was expressly contingent upon the defendants reaching an agreement with respect to arbitration. We understand you disagree with that position and, as a result, seek interest on the settlement amount to be paid by my clients. We dispute that any interest is owing.

"Despite our dispute, we hereby enclose American Alternative Insurance Corporation's check # 0018404361 on behalf of defendants Northeast Corridor Foundations, Balfour Beatty Construction, Inc., Mass Electric Construction, Inc., J.F. White Corporation and David Gilman in the amount of $1.5 million made payable to "Matthew Shafner, Esq. Attorney for Vincent &

charge, the defendants bore the burden of proving not only that there was "a dispute" between the parties, but also that the amount of the plaintiff's claim was "unliquidated or subject to a bona fide dispute . . . ." General Statutes § 42a-3-311 (a) (ii).

After February 2, 2001, there was no basis for a *good faith* dispute about the defendants' indebtedness to the plaintiff. Likewise, there was no basis for a *good faith* dispute about the amount of the defendants' indebtedness for interest. Section 52-195c unequivocally required the defendants to pay interest at the rate of 12 percent per year after February 2, 2001. Under these circumstances, the court found that the defendants' letter stating that the check was tendered as full satisfaction of its indebtedness had no legal effect.[9]

We are persuaded that the court's findings must be sustained. The defendants did not satisfy the burden of proof assigned to them by § 42a-3-311 (a) or by the common law. We conclude, therefore, that the defendants have not provided any sustainable basis for their argument that the trial court's judgment should be set aside. None of the court's findings of fact was clearly erroneous.

In a last ditch effort to avoid their obligation to the plaintiff, the defendants maintain that the court lost

Sandra Douthwright" in full and final settlement of the referenced matter."

The plaintiff's counsel responded on May 1, 2001, in a letter stating: "I received the check for Mr. and Mrs. Douthwright in the amount of $1,500,000 on Wednesday, April 25, 2001 by Federal Express delivery. While I cannot agree that this is a full and final settlement in view of the pending motion, I do thank you for sending the check at this time."

[9] General Statutes § 42a-3-311 (b) further conditions a discharge on the debtor's proof of "a conspicuous statement to the effect that the instrument was tendered as full satisfaction" of the disputed debt. The court found that the letter sent by the defendant did not communicate its intent to seek discharge of its principal obligation as well as of its indebtedness for interest. Presumably, this failure of communication means that the requirements of subsection (b) were also not met.

jurisdiction over the plaintiff's claim for relief once the plaintiff withdrew its motion for default judgment. This argument would be difficult to sustain in light of § 52-195c (a), to which the defendants do not refer. We need not consider its merits, however, because it was never presented to the trial court. See Practice Book § 60-5.

The court properly rendered a judgment entitling the plaintiff to recover interest in the amount of $40,931.45.

The judgment is affirmed.

In this opinion the other judges concurred.